731 A.2d 441

**AUCTION & ESTATE REPRESENTATIVES, INC.**

v.

**Sheila ASHTON.**

**No. 158, Sept. Term, 1998.**

Court of Appeals of Maryland.

June 9, 1999.

Mary T. Keating, Baltimore, for petitioner.

Christopher R. West (Semmes, Bowen & Semmes, both on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and THEODORE G. BLOOM (retired, specially assigned) JJ.

CATHELL, Judge.

Respondent Sheila Ashton filed a claim in the District Court of Maryland, sitting in Baltimore City, against petitioner Auction & Estate Representatives, Inc. for breach of contract. The District Court found against respondent, but the Circuit Court for Baltimore City, in an appeal on the record, reversed. Petitioner filed a Petition for Writ of Certiorari in this Court, which we granted. Because petitioner breached its contract with respondent, we shall affirm the judgment of the circuit court. We shall remand the matter, however, so that respondent's request for attorney's fees associated with the present appeal may be considered.

## I. Facts

Sheila Ashton, respondent, inherited from her parents a single family residence located in Baltimore City. After initial attempts to sell the property proved unsuccessful, respondent engaged Auction & Estate Representatives, Inc., petitioner, to sell the property. The parties entered into a contract, which was drafted by petitioner, on January 30, 1997. This contract provided in part:

SHEILA ASHTON[,] hereinafter referred to as Seller(s), for good and valuable consideration, the receipt of which is hereby acknowledged, grant(s) unto AUCTION & ESTATE REPRESENTATIVES, INC.[,] hereinafter referred to as Auctioneer, the Exclusive Right and Authority to Sell and a lien thereon to secure any commissions or expenses due said auctioneer, of the Real Estate described as ... 401 Suffolk Rd[.], Baltimore 21218.

Petitioner promised, for a commission of ten percent, to "use its best efforts to secure a Purchaser for the ... property" for a price of $90,000 or higher. The terms of the contract also specified the following:

It is mutually agreed upon between the Seller and Auctioneer that the *Auctioneer shall provide all necessary equipment, personnel, contracts and forms to produce a high quality sale.* It shall be the sole responsibility of the Auctioneer to direct the efforts of all promotion, sale and closing of the above-described property and to employ the services of any other organization in these efforts. [Emphasis added.]

At the auction, John Maguire was the highest bidder at $91,000, to which was added a ten percent buyer's premium, for a total sale price of $100,100. As this bid exceeded respondent's $90,000 minimum, the bid was accepted and Maguire's signature was obtained on the contract of sale prepared by petitioner. Petitioner does not dispute that the contract was not accompanied by the written disclosure or disclaimer form required by Maryland Code (1974, 1996 Repl. Vol.), section 10–702(b)(1) of the Real Property Article,[1] which mandates that "[a] vendor of single family residential real property shall complete and deliver to each purchaser" a written disclosure or disclaimer form provided by the State Real Estate Commission. Section 10–702(g) provides that any purchaser who does not receive the form "on or before entering into the contract of sale has the unconditional right, upon written notice to the vendor or vendor's agent," to rescind the contract within the specified period of time and demand the immediate return of the deposit.

The sales contract was to be settled by April 1, 1997. Before settlement, Maguire stated that he was unsatisfied with the condition of the garage on the property and claimed he had not been afforded the opportunity to inspect the garage in advance of the sale. Maguire demanded the sale price be reduced to compensate for the anticipated repair costs to the garage roof and floor. When his demands were not met immediately, Maguire threatened to rescind the sales contract based on his entitlement to do so under section 10–

---

**1.** All statutory references shall be to the Real Property Article unless otherwise indicated.

702(g) because he never received the disclosure or disclaimer form required by the statute. Maguire ultimately asserted that if respondent reduced the purchase price by $4,000 and forgave twenty-three days of interest charges accrued in the amount of $580.29 for failure to settle by the settlement date, he would forbear his right to rescind the sales contract and proceed to closing. Respondent, under the advisement of counsel, agreed to Maguire's terms.

On May 12, 1997, respondent filed an action against petitioner in the District Court for Baltimore City to recover the reduction in the purchase price and lost interest. Respondent claimed petitioner breached its contractual agreement with respondent to provide all forms necessary in connection with the sale of the house. Respondent also sought attorney's fees, as permitted by the contract. Petitioner filed a counter-claim against respondent for attorney's fees. At trial, the District Court judge first noted that "the main purpose of . . . section [10–702] is to provide the buyer with information that permits an informed decision whether to make an offer or if an offer was already made, and accepted, to rescind that contract." The judge went on to find that petitioner was not required by section 10–702 to deliver the standardized form to Maguire. Instead, because the sale contract between respondent and Maguire and the contract between petitioner and respondent contained "as is" disclaimer language, the purpose of the statute was satisfied. Judgment was entered in favor of petitioner.

Respondent appealed on the record to the Circuit Court for Baltimore City. That court reversed the judgment of the District Court, holding that section 10–702 clearly and unambiguously required petitioner to provide Maguire with the standardized disclosure or disclaimer form. In its written memorandum opinion, the court stated:

Even if a substitute format were permitted, the disclaimer language used by the auctioneer does not comply with the statutory language. Contractual references to "as is" do not satisfy either the list of specific disclosures set forth

on the standardized form, or the alternative disclaimer language.

Because [petitioner] did not provide the required disclosure form, Maguire was within his statutory rights to rescind the contract. Similarly, [respondent] was reasonable in mitigating her damages by accepting a reduced purchase price in lieu of rescission.

The court found in favor of respondent and entered a judgment awarding her $4,580.29 plus attorney's fees, which totaled $4,568.30, and costs of $460.[2]

Petitioner noted an appeal to the Court of Special Appeals. Because the decision by the circuit court was an appeal from the final judgment of the District Court, however, any further appeal was governed by Maryland Code (1973, 1998 Repl.Vol.), sections 12–307(2) and 12–305 of the Courts & Judicial Proceedings Article.[3] The Court of Special Appeals transferred

---

**2.** The contract specifically provided for the recovery of attorney's fees and costs: "In the event of litigation between the parties named in this Agreement, the prevailing party shall be entitled to recover all costs of litigation including reasonable attorney's fees." The circuit court, in its order, noted that the parties stipulated in the District Court trial that respondent's "fees in the amount of $4,568.30 were fair and reasonable, consistent with the rates charged in Baltimore City for similar representation, and the work performed by counsel was reasonable and necessary." Respondent also requested $2,100 in attorney's fees for the cost of preparing the appeal to the circuit court. The circuit court found that respondent had not met her burden in demonstrating that this additional fee amount was fair and reasonable. The parties do not dispute the lower court's findings as to the fees and costs already awarded.

**3.** Section 12–307(2) of the Courts and Judicial Proceedings Article states that this Court has "[j]urisdiction to review a case or proceeding decided by a circuit court, in accordance with § 12–305 of this subtitle." Section 12–305 provides in relevant part:

The Court of Appeals shall require by writ of certiorari that a decision be certified to it for review and determination in any case in which a circuit court has rendered a final judgment on appeal from the District Court ... if it appears to the Court of Appeals, upon petition of a party that:

(1) Review is necessary to secure uniformity of decision, as where the same statute has been construed differently by two or more judges; or

the matter to this Court by its own motion pursuant to Maryland Rule 8–132. *See Morris v. Gregory,* 339 Md. 191, 194, 661 A.2d 712, 714 (1995). Petitioner filed a Petition for Writ of Certiorari before this Court, which we granted on February 10, 1999.

## II. Discussion and Analysis

Petitioner's main contention on appeal is that it, as an auctioneer, was not required by section 10–702 to provide the standardized disclosure or disclaimer form provided for in that statute because auctioneers are not regulated by the Real Estate Commission, the entity charged with creating and disbursing the form. Alternatively, petitioner argues that the District Court properly found that it had substantially complied with the statute by disclaiming any warranties concerning the property. Respondent argues that she never has contended section 10–702 applies to auctioneers in their capacity as auctioneers. Instead, she states, because she as the seller was obligated under the statute to provide the standardized form, petitioner assumed her obligation to provide the form to a buyer when it specifically contracted to "provide all necessary . . . forms to produce a high quality sale." Legislative intent and the effect of section 10–702, respondent suggests, is irrelevant with regard to petitioner's breach of contract in failing to provide the standardized disclosure form. We agree with respondent and shall affirm.[4]

The real matter at issue in this case is the express written contractual agreement between petitioner and respon-

(2) There are other special circumstances rendering it desirable and in the public interest that the decision be reviewed.

4. Respondent initially filed her complaint against petitioner in the District Court seeking to recover the reduction in purchase price and lost interest. This claim was based upon petitioner's alleged breach of contract with regard to its failure to provide Maguire with the standardized disclosure form the statute requires a seller to provide. Somewhere along the way, this case got off track and was transformed into a statutory interpretation case. We shall put this case back on track and resolve the actual issue before us of whether petitioner breached its contractual obligations to respondent.

dent. More specifically, we must evaluate the effect of petitioner's promise to "provide all necessary ... forms to provide a high quality sale" as the entity with the exclusive right and authority to sell the Suffolk Road property. Before we turn to the contract itself, we first note that Maryland has long adhered to the law of objective interpretation of contracts. *See Calomiris v. Woods,* 353 Md. 425, 435, 727 A.2d 358, 363 (1999); *Adloo v. H.T. Brown Real Estate, Inc.,* 344 Md. 254, 266, 686 A.2d 298, 304 (1996); *Maryland v. Attman/Glazer P.B. Co.,* 323 Md. 592, 604, 594 A.2d 138, 144 (1991); *Cloverland Farms Dairy, Inc. v. Fry,* 322 Md. 367, 373, 587 A.2d 527, 530 (1991); *Aetna Cas. & Sur. v. Insurance Comm'r,* 293 Md. 409, 420, 445 A.2d 14, 19 (1982). Under this principle, the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean. *See Adloo,* 344 Md. at 266, 686 A.2d at 304; *GMAC v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985); *Board of Trustees v. Sherman,* 280 Md. 373, 380, 373 A.2d 626, 629 (1977). "Where the language of the contract is unambiguous, its plain meaning will be given effect. There is no need for further construction." *Aetna Cas. & Sur.,* 293 Md. at 420, 445 A.2d at 19. *See also Devereux v. Berger,* 253 Md. 264, 269, 252 A.2d 469, 471 (1969); *Sands v. Sands,* 252 Md. 137, 143, 249 A.2d 187, 191 (1969). An ambiguity arises when the language of the contract is susceptible of more than one meaning to a reasonably prudent person. *See Calomiris,* 353 Md. at 436, 727 A.2d at 363; *Beckenheimer's, Inc. v. Alameda Assocs. Ltd. Partnership,* 327 Md. 536, 547, 611 A.2d 105, 110 (1992); *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 596, 578 A.2d 1202, 1208 (1990) (citing *Trucks Ins. Exch. v. Marks Rentals, Inc.,* 288 Md. 428, 433, 418 A.2d 1187, 1190 (1980)). We recently summarized a court's task in interpreting a contract:

"[A court must d]etermine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and

unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean."

*Calomiris,* 353 Md. at 436, 727 A.2d at 363 (quoting *GMAC,* 303 Md. at 261, 492 A.2d at 1310).

 Interpretation of a written contract ordinarily is a question of law for the court. *See Calomiris,* 353 Md. at 434, 727 A.2d at 362; *JBG/Twinbrook Metro Ltd. Partnership v. Wheeler,* 346 Md. 601, 625, 697 A.2d 898, 911 (1997); *Suburban Hosp., Inc. v. Dwiggins,* 324 Md. 294, 306, 596 A.2d 1069, 1075 (1991). As we stated recently in *Calomiris,* 353 Md. at 434, 727 A.2d at 362, "the determination of ambiguity is one of law, not fact, and that determination is subject to *de novo* review by the appellate court." Because this case involves the interpretation of the written contract between petitioner and respondent, we review the issue of ambiguity *de novo,* using the language of the contract itself.

In *Cloverland,* 322 Md. 367, 587 A.2d 527, the issue was whether the gross receipts from the sale of lottery tickets or the commissions made on their sale were "gross sales" within the meaning of a commercial lease that required the tenant to pay as additional rent a specific percentage of gross sales made in the store. Holding that "gross sales" contemplated only the commissions on the sale of the lottery tickets, the Court explained that there was no ambiguity in the language of the lease:

In applying the objective theory of contracts to the lease now before us, we recognize that Cloverland agreed to pay a specified percentage of its gross sales "of every kind" made on the leased premises as additional rent. We think reasonable persons in the position of the parties would have

thought that the additional rental percentage clause encompassed the sale of any and all items, not expressly excluded, which Cloverland would sell in its store in the course of its business activities. It was reasonable that the parties would view the percentage rental provision of the lease as applying to the gross amount of its sales—amounts which Cloverland was entitled to retain as its own property. We think that the parties would reasonably have recognized that monies produced by Cloverland from its sale of lottery tickets, other than sales commissions, did not belong to Cloverland, but were held only temporarily by it. In these circumstances, it was reasonable that the parties would recognize that Cloverland's activities as a licensed sales agent for the State in the sale of lottery tickets produced for it only commission revenues limited by law. In effect, Cloverland sold its services to the State in return for these sales commissions and it is only that amount that is subject to the percentage rental clause of the lease. Indeed, the reasonableness of that understanding is fortified by the treatment afforded by the lease to money order sales by Cloverland, which included only commissions as a part of "gross sales," thus recognizing that Cloverland was in reality selling a service in return for commissions.

*Id.* at 373–74, 587 A.2d at 530.

■ Turning to the case at hand, as we have indicated, petitioner and respondent entered into a written contract on January 30, 1997. This contract specified the terms of each party's obligations with respect to the auction of the Suffolk Road property. In particular, respondent granted to petitioner the "Exclusive Right and Authority to Sell" the property and petitioner explicitly agreed to "provide all necessary . . . forms to produce a high quality sale." By entering this contract, petitioner became respondent's agent and expressly assumed certain responsibilities on her behalf.

The provisions of this contract are not ambiguous because they are not susceptible to more than one meaning to a reasonably prudent person in the position of the parties.

First, respondent clearly intended that petitioner act as the exclusive agent to sell the property when she agreed to grant petitioner "the Exclusive Right and Authority to Sell and a lien thereon to secure any commissions or expenses due said auctioneer," for its services in auctioning the Suffolk Road property. By these provisions, petitioner became the sole agent for respondent with respect to the sale of the property. Petitioner does not dispute this conclusion.

Second, petitioner clearly agreed to assume the responsibility for providing "*all necessary* equipment, personnel, contracts and *forms* to produce a high quality sale." (Emphasis added.) These words are not ambiguous. Mindful of the principle that "[i]n the construction of contracts, words are to be given their ordinary meaning," *Kasten Const. Co. v. Rod Enterprises, Inc.*, 268 Md. 318, 329, 301 A.2d 12, 18 (1973), MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 29 (10th ed.1998) defines the word "all" as "the whole amount or quantity of" or "every." "Necessary" is defined as "absolutely needed: required." *Id.* at 776. Finally, the word "form," used in this context, is defined as "a prescribed and set order of words" or "a printed or typed document with blank spaces for insertion of required or requested information." *Id.* at 458. We believe that any reasonably prudent person in the parties' positions would interpret this contract provision as requiring petitioner to provide every document required for the sale of the Suffolk Road property.

Clearly, many forms are required in the sale of real property. As relevant to the issue before us, however, we turn to section 10–702 of the Real Property Article. As we have discussed, section 10–702(b)(1) requires the "vendor [5] of single family residential real property [to] complete and deliver to each purchaser: (i) A written residential property condition disclosure statement on a form provided by the State Real

---

**5.** Vendor is described in section 1–101(n) as having "the same meaning as seller."

Estate Commission; or (ii) A written residential property disclaimer statement on a form provided by the State Real Estate Commission." Section 10–702(b)(2) clarifies that "[t]he State Real Estate Commission shall develop by regulation a single standardized form that includes the residential property condition disclosure and disclaimer statements required by this subsection." The vendor must deliver the disclosure or disclaimer statement to the buyer on or before the date the parties enter into the contract of sale. § 10–702(e). Furthermore, as Maguire threatened to do in this case, a buyer who does not receive the disclosure or disclaimer form on or before entering the contract has the unconditional right to rescind the contract before receipt of the form or within five days after he or she receives the form. § 10–702(g).

■ We first note that "Maryland adheres to the general rule that parties to a contract are presumed to contract mindful of the existing law and that all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, except where a contrary intention is evident." *Wright v. Commercial & Sav. Bank*, 297 Md. 148, 153, 464 A.2d 1080, 1083 (1983). The parties apparently do not dispute the statutory requirement for sellers to provide the disclosure or disclaimer form. The parties also do not dispute that respondent was the seller of the property. What is more, neither of the parties contest that petitioner, by executing the contract to auction the property, assumed several of respondent's responsibilities as seller. Petitioner does contest the interpretation that auctioneers must provide the disclosure or disclaimer form to buyers pursuant to section 10–702. The issue is not, however, whether auctioneers are required by law to provide the forms. Petitioner, by expressly contracting to do so, agreed to accept the responsibility normally attributed to sellers to provide the disclosure or disclaimer form and, for that matter, any other form necessary to complete the sale, even if it were not statutorily required to do so in its capacity as an

auctioneer.[6] Accordingly, by executing the auction contract with respondent, petitioner agreed to provide to the buyer of the property the disclosure or disclaimer form, whether or not section 10–702 required it to do so in its capacity as an auctioneer. Petitioner's failure to do so resulted in a breach of that contract.

### III. Conclusion

Petitioner, an auctioneer, was required by the auction contract to provide the standardized disclosure or disclaimer form to Maguire, the purchaser of the Suffolk Road property. This obligation arose not because petitioner, as the auctioneer of real property, necessarily was required by statute to do so, but because it contracted specifically with respondent and assumed her obligation as seller to provide all forms necessary to effectuate a sale of the property. If it could not provide the form, petitioner should not have contracted to do so. Accordingly, we shall affirm the result reached by the circuit court for the reasons stated herein.

The auction contract provided that the prevailing party shall be entitled to recover reasonable attorney's fees associated with the cost of litigation. In her brief before this Court, respondent requests that we award attorney's fees incurred in this appellate process or, in the alternative, remand the matter to the circuit court. We shall remand this case to the circuit court for the limited purpose of addressing the issue of contractual counsel fees and expenses associated with this appeal.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; CASE REMANDED FOR CONSIDERATION OF THE AMOUNT OF REASONABLE ATTORNEY'S FEES AND EXPENSES, IF ANY, ASSOCI-**

---

6. We do not express an opinion as to whether section 10–702 generally requires auctioneers to provide the disclosure or disclaimer form. This appeal involves the contracted responsibility to do so and our holding is limited to the facts of this case.

ATED WITH THE PRESENT APPEAL; COSTS TO BE PAID BY PETITIONER.