782 A.2d 351

**Daryl D. DAVIS,**

v.

**Carol B. MAGEE, et al.**

No. 328, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Aug. 29, 2001.

Reconsideration Denied Nov. 5, 2001.

Elbert R. Shore, Rockville, for appellant.

Brian G. Kim, Associate County Attorney (Charles W. Thompson, Jr., County Attorney, Joann Robertson, Chief, Litigation Division and Karen L. Federman Henry, Principal Counsel for appeals, on the brief), Rockville, for appellees.

Argued before HOLLANDER, THIEME,* and DEBORAH S. EYLER, JJ.

DEBORAH S. EYLER, Judge.

The Circuit Court for Montgomery County granted summary judgment in favor of Carol B. Magee ("Magee"), the appellee, in an action in tort and for violation of state constitutional rights brought against her by Daryl D. Davis ("Davis"), the appellant. On appeal, the appellant presents three questions for review, which he has subdivided into six questions. We have combined, reworded, and restated the first question, including its subpart, as follows:

---

* Thieme, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

 I. Did the circuit court err in granting summary judgment on the ground that Davis's claims were barred by release?

We also shall address the appellant's second question, which we have restated as follows:

 II. Did the circuit court err in granting summary judgment on the ground of release because the expungement statute is unconstitutional?

For the following reasons, we answer both questions "No," and therefore we shall affirm the judgment of the circuit court. We do not reach the third question, and its subparts.[1]

## FACTS AND BACKGROUND

At the time of the pertinent events, Magee was a police officer assigned to the Youth Services Investigation Division of the Montgomery County Police Department ("MCPD"). On March 11, 1997, a fifteen-year-old girl reported to MCPD that the appellant had engaged in sexual intercourse with her on January 10, 1997. Magee investigated the accusation. One

---

1. The questions as presented by the appellant read as follows:

 I. The circuit court erred in entering summary judgment in favor of office[r] Magee on grounds of the general waiver and release

 A. Because the general waiver and release provides without any limiting language that it is conditioned on the expungement of "the record of my arrest, detention or confinement," the word "record" is unambiguous and can only be construed as meaning all records maintained by any state agency.

 B. Assuming *arguendo* that the general waiver and release is ambiguous, the circuit court erred in entering summary judgment for Officer Magee and instead should have submitted the release to the jury for resolution of the ambiguity.,

 C. This Court's decision in *Pantazes v. Pantazes* does not compel a different result.

 II. Assuming *arguendo* that the release is enforceable as a matter of contract law, the circuit court erred in entering summary judgment because the expungement statute is unconstitutional.

 III. The summary judgment cannot be upheld on other grounds.

 A. The summary judgment cannot be upheld on grounds that Mr. Davis failed to give the notice required by the local government tort claims act.

 B. The summary judgment cannot be upheld on grounds of immunity.

week later, on March 18, 1997, Magee applied for and obtained a statement of charges against the appellant for a third degree sexual offense and a warrant for his arrest. The arrest warrant was executed on March 26, 1997. The appellant was held in custody for 30 hours before being released on bail.

On June 27, 1997, the appellant appeared in the District Court for Montgomery County for a preliminary hearing. A plea agreement was negotiated at that time, in which the State entered a *nolle prosequi* on the third degree sexual offense charge and the appellant executed a "General Waiver and Release." The language of the General Waiver and Release tracks that set forth in Md. Rules Form 4–503.2, as the form read in 1997. It states:

> I, *Daryl Dwight Davis,* hereby release and forever discharge *Det. Carol Magee,* and the *Montgomery County Police Department,* all of its officers, agents and employees and any and all other persons from any and all claims which I may have for wrongful conduct by reason of my arrest, detention or confinement on or about *March 26, 1997.*
>
> This General Waiver and Release is conditioned on the expungement of the record of my arrest, detention, or confinement and compliance with Section 736(c) of Article 27 of the Annotated Code of Maryland, and shall be void if these conditions are not met. .
>
> WITNESS my hand and seal this *27th* day of *June, 1997.*

(Italicized entries hand-written in original; remainder in type.)

At the same time that he signed the General Waiver and Release, the appellant filled out a "Petition For Expungement of Records (Acquittal, Dismissal, Or Nolle Prosequi)," tracking the language of Md. Rules Form 4–504.1. The petition states that the appellant was arrested on a charge of third degree sexual offense, on March 26, 1997, that "[o]n or about *June 27, 1997,*" he was "tried and acquitted, or the said charge was dismissed, or a Nolle Prosequi was entered," and that "[i]f less than three years ha[d] passed since the disposition of the charges ... a General Waiver and Release" was attached.

(Italicized entries hand written; remainder in type.) The petition and General Waiver and Release were filed in the district court criminal case.

There is no expungement order in the record before us. It is undisputed, however, that the district court granted the appellant's petition and issued an expungement order. As an appendix to her brief, the appellee has attached an October 15, 1997 letter from Lieutenant George C. Heinrich of the MCPD to the Honorable Cornelius J. Vaughey, of the District Court for Montgomery County, that refers to the appellant's name, his "MCP ID # ," his "court case # ," his date of arrest, and the charge against him, and states, "We have expunged the above referenced from our files according to your order, and notified the Maryland State Police and FBI of this action."

By letter of October 29, 1997, the Montgomery County Department of Health and Human Services (DHHS) notified the appellant that it had investigated allegations of child abuse against him and had determined that he would remain "indicated" as a child abuser in its files. The letter further states that the appellant's identification as a child abuser would not be expunged. Later, the appellant learned that the Montgomery County Department of Social Services (DSS) was maintaining his name on its Central Registry of Child Sexual Abusers as an "indicated" child abuser.

On March 9, 1998, in the Circuit Court for Montgomery County, the appellant filed a complaint and request for jury trial against Magee, the MCPD, Police Chief Carol Mehrling, and Montgomery County. On May 6, 1998, he amended his complaint so as to eliminate all the defendants except Magee. The amended complaint set forth claims against Magee for false arrest, false imprisonment, and malicious prosecution. In a second amended complaint, filed on October 26, 1998, the appellant added a claim alleging state constitutional torts. All of the appellant's claims stemmed from Magee's handling of the investigation of the child sexual abuse allegations against the appellant and her conduct in applying for a statement of

charges and an arrest warrant, executing the warrant, and taking the appellant into custody.

In her answers to each of Davis's complaints, Magee raised, *inter alia,* the defense of release.

In the meantime, in March 1998, the Montgomery County Council scheduled a public hearing to address citizen complaints of racism against certain members of the MCPD. The appellant appeared at that hearing to speak about his contention that in having him charged with a third degree sexual offense Magee had acted out of racial animus. Lieutenant Frank W. Young, of the Youth Services Investigation Division of the MCPD, also appeared at that hearing, to speak in defense of Magee. Before Lt. Young spoke, he submitted a document entitled "OIA [Office of Internal Affairs] Case Update," which was dated March 9, 1998. In the "OIA Case Update," Lt. Young identified the appellant as a person who had filed a letter of complaint alleging that he had been improperly investigated by an officer of the MCPD. Lt. Young explained that the OIA had looked into the complaint and had determined that the officer had had sufficient basis on which to take action against the appellant.

The "OIA Case Update" was made available to members of the public who attended the Montgomery County Council hearing. Lt. Young also made an oral statement at the hearing. The text of the statement was prepared in advance and disseminated to members of the public in attendance. Lt. Young did not identify the appellant or Magee by name. He elaborated on the details and disposition of the charges against the appellant, however, saying, among other things, that his complaint had been reviewed by OIA and that

it was determined that [Magee] had more than sufficient probable cause to apply for, and obtain, a warrant charging this individual with a felony sexual offense. The charges were nol-prossed by the State's Attorney's Office, because it was felt the victim would be unable to stand the rigors of a trial.

On February 25, 1999, Magee filed a motion to dismiss, or in the alternative for summary judgment, on several grounds, one of which was that, as a matter of law, the appellant's claims were barred by the General Waiver and Release. The appellant filed an opposition and supporting affidavit. He argued that the General Waiver and Release was void because not all of the records that were required to have been expunged under its terms had been expunged. The appellant did not dispute that the MCPD had expunged the records it had of his arrest, detention, and charges. He also did not dispute that the district court had expunged its records. He argued, however, that the police had not expunged the OIA documents prepared by Lt. Young and that the DHHS and DSS had not expunged their records pertaining to his "indicated" status as a child abuser. He also argued that Md.Code, Art. 27, § 736(c) and Md. Rule Crim. Proc. 4–504, both pertaining to expungement of criminal records, are unconstitutional.

In her reply memorandum, Magee argued that all of the records required to be expunged pursuant to the General Waiver and Release had been expunged and, therefore, the General Waiver and Release was not void.

Magee's motion was heard by the circuit court on April 5, 1999. At the conclusion of the hearing, the court granted summary judgment in favor of Magee on the defense of release, explaining:

I am going to decide the case on the basis of the release.... I find that there is no material dispute of fact as to whether or not there was a release in the case signed by [the appellant], and that the release bars his claim under his second amended complaint.

[The appellant] argues that that should not be so because it is a conditional release, and the conditions have not been met, or at least there is a dispute of fact as to whether the conditions have been met.

The [c]ourt finds that the conditions have been met, that the argument that DSS and Internal Affairs and a memo from Detective Young are still not expunged, in my view, is

not a valid argument because of the statute's definition of what records are contemplated being expunged, and that the release is related to that statute, and that that is how the release should be interpreted.

The appellant then noted a timely appeal to this Court.

## STANDARD OF REVIEW

When deciding whether to grant a motion for summary judgment, the trial court must determine whether there is a genuine dispute of material fact and, if not, whether one party is entitled to judgment as a matter of law. Md. Rule 2–501; *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 737–38, 625 A.2d 1005 (1993); *Pettit v. Erie Ins. Exchange,* 117 Md.App. 212, 218, 699 A.2d 550 (1997). A material fact is one that will somehow affect the outcome of the case. *Goodwich v. Sinai Hosp. of Baltimore, Inc.,* 343 Md. 185, 206, 680 A.2d 1067 (1996). In order to defeat a motion for summary judgment by showing that there is a genuine dispute of material fact, the party opposing the motion must submit admissible evidence of the disputed fact. *Tennant v. Shoppers Food Warehouse,* 115 Md.App. 381, 386, 693 A.2d 370 (1997). If there is no genuine dispute of material fact, the circuit court resolves the case as a matter of law. *Fearnow v. Chesapeake & Potomac Tel. Co.,* 104 Md.App. 1, 48, 655 A.2d 1 (1995), *aff'd in part, rev'd in part,* 342 Md. 363, 676 A.2d 65 (1996).

On review of the grant of summary judgement, we determine whether the circuit court correctly decided that there was no genuine dispute of material fact and whether the trial court reached the correct legal result. *Beatty, supra,* at 737, 625 A.2d 1005. Ordinarily, we review a grant of summary judgment based "only on the grounds relied upon by the trial court." *Blades v. Woods,* 338 Md. 475, 478, 659 A.2d 872 (1995).

## DISCUSSION

### I.

Md.Code (1957, 1996 Repl.Vol.), Art. 27, sections 735 through 741, and Maryland Rules 4–501 through 4–512, govern

expungement of criminal records. In *Mora v. State,* 355 Md. 639, 641, 735 A.2d 1122 (1999), the Court of Appeals explained that under the expungement statutes, "[t]wo situations are provided for—when a person is arrested or otherwise detained but not formally charged, and when a person is formally charged but, for any of the reasons enumerated . . . is not convicted or, if convicted, is pardoned."

Under section 736(a), which applies to the first situation, a person who has been arrested, detained, or confined by a law enforcement agency for certain crimes, and has been released without being charged with the commission of a crime, may give notice to "any law enforcement agency which he believes may have police records concerning that arrest, detention, or confinement, and request expungement of those police records." The notice may not be given before the expiration of the statute of limitations for tort actions arising from the incident unless the person files a General Waiver and Release of any claims he might have against any person for tortious conduct arising from the incident. The General Waiver and Release is to be in the form as set forth in Md. Rules Form 4–503.2. Md. Rule 4–503(a). If the law enforcement agency denies the request, the person may file an application for expungement of police records in the district court for the county in which the applicant was first arrested, detained, or confined. The district court then may issue an order requiring the agency to expunge the records. § 736(e) and (f).

By contrast, § 737 allows, among other things, a person who has been charged criminally on a charge that is later *nolle prossed* to petition the court in which the proceeding was commenced for expungement of "the police records, court records, and other records maintained by the State of Maryland and its subdivisions, pertaining to the charge." The petition must be filed in the original action. Md. Rule 4–504(a). It may not be filed within three years after the charges have been *nolle prossed,* however, unless the petitioner attaches an executed General Waiver and Release of all claims he may have against any person for tortious conduct arising from the charge. § 737(d)(2)(i); Md. Rule 4–504(b).

The General Waiver and Release must be "in the form set forth . . . as [Maryland Rules] Form 4.503.2." Md. Rule 4–504(b). If the State's Attorney does not object to the petition within 30 days after service, he is deemed to have consented, and the court must enter an order requiring the expungement of police records and court records pertaining to the charge. § 737(i); Md. Rule 4–505(d).

Art. 27, § 735 defines, among other terms, "court records," "police records," and "expungement." "Court records" and "police records" are defined inclusively and exclusively: the statute explains what they are and specifies records that do not qualify. "Expungement" is defined only "with respect to court records or police records" and

> means the effective removal of these records from public inspection: (1) By obliteration; (2) By removal to a separate secure area to which the public and other persons having no legitimate reason for being there are denied access; or (3) If effective access to a record can be obtained only by reference to other records, by the expungement of the other records, or the part of them providing the access.

Against that background, the appellant contends that the circuit court erred in concluding that the General Waiver and Release he signed was effective, and operated to bar his claims against Magee. The appellant does not argue that there was a genuine dispute of material fact precluding entry of summary judgment. Rather, he argues that on the undisputed facts the court erred as a matter of law in its interpretation of the word "record" in the General Waiver and Release. Specifically, the appellant argues that because he had been charged with a crime, his case was governed by § 737, not § 736; therefore, the word "record" as used in the General Waiver and Release included "other records maintained by the State and its subdivisions pertaining to the charge[,]" among which were records of DHHS, DSS, and OIA. Because those "other records" were not expunged, he argues, the condition necessary to make the General Waiver and Release operative was not satisfied, and it was void. Accordingly, the General Waiver and Release did not bar his claims against Magee.

Magee counters that the circuit court correctly ruled that because the General Waiver and Release clearly and unambiguously referenced Article 27, § 736, which covers only "police and court records," only police and court records were required to be expunged, and the undisputed facts established that those records indeed were expunged. Therefore, the condition required by the General Waiver and Release was fulfilled, and the circuit court properly ruled that it was effective to bar the claims against her.

As we have explained, the "General Waiver and Release" signed by the appellant was as set forth in Md. Rules Form 4.503.2, as it appeared in the Maryland Rules in 1997. That "General Waiver and Release" first was adopted and made effective by the Court of Appeals on April 1, 1976, one year after the expungement statutes, including sections 736 and 737, were enacted. At that time, it was labeled "Expungement Form 2." In 1984, "Expungement Form 2" was recodified as Md. Rules Form 4–503.2, as part of the revisions of the Maryland Rules adopted that year.

From 1976 until 1998, the language of the General Waiver and release form was unchanged, and was as it appears in the document signed by the appellant in this case. Of significance to the issue before us, during that 22–year period, the language of the form referred only to § 736 and not to § 737—even though § 737 always contained a reference to a General Waiver and Release having to be filed in certain situations in which a petition for expungement was permitted to be filed earlier than three years after the judgment or order of the court. Thus, for that length of time, the language of the form General Waiver and Release that was to be filed with a § 737 petition for expungement, in some situations, was not in sync with the language of § 737 itself, and made no reference to it.

On October 1, 1998, the Court of Appeals amended Md. Rules Form 4–503.2 to include a reference to § 737. Specifically, the following italicized words were added:

This General Waiver and Release is conditioned on the expungement of the record of my arrest, detention, or

confinement and compliance with Section 736(c) *or 737* of Article 27 ..., *as applicable,* and shall be void if these conditions are not met.

The Minutes of the meeting of the Court of Appeals Standing Committee on Rules of Practice and Procedure in which this change was endorsed reflect that there was no discussion of the changes and that the changes were made to conform the "General Waiver and Release" form to the statute. *See* Minutes of September 6, 1996 meeting, agenda item 7.

Also of relevance to this case, in 1996, the General Assembly amended § 737 to permit a person against whom charges had been brought and then *nolle prossed* to petition for expungement earlier than three years after the *nolle prosequi* was entered only if the person filed a written "General Waiver and Release." 1996 Md. Laws, Chap. 613. Before then, and beginning on July 1, 1988, a person in that situation could file a petition for expungement immediately upon entry of the *nolle prosequi,* without any time limitation and without signing a release. 1988 Md. Laws, Chap. 723.[2]

■ Thus, when the appellant signed the General Waiver and Release in this case, he was permitted, under § 737, to file a petition for expungement of the *nolle prossed* charge earlier than three years after the date of entry of the *nolle prosequi,* but only if he signed a "General Waiver and Release" as set forth in Md. Rules Form 4–503.2; that form had not yet been amended, however, to refer to § 737. Instead, it still contained its original language, referring only to § 736, which did not apply to the appellant's situation. With this legislative history in mind, we turn to the first sub-issue in this case, which is whether the circuit court erred in ruling that the parties intended the General Waiver and Release to apply only to records covered by § 736—and not to records covered by § 737.

---

2. Before July 1, 1988, however, section 737 required that a person against whom a charge was *nolle prossed* wait three years before filing a petition for expungement. No exception was permitted. Md.Code (1987), art. 27, § 737 (originally enacted as 1976 Md. Laws, Chap. 260).

 Releases are contracts and therefore are construed according to the principles of contract interpretation. "[A] release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation." *Pantazes v. Pantazes,* 77 Md.App. 712, 719–20, 551 A.2d 916 (1989). " 'The primary source for determining the intention of the parties is the language of the contract itself.' " *Chicago Title v. Lumbermen's Mut. Cas. Co.,* 120 Md.App. 538, 548, 707 A.2d 913 (1998) (quoting *Hartford Accident and Indem. Co. v. Scarlett Harbor Assocs. Ltd. Partnership,* 109 Md.App. 217, 291, 674 A.2d 106 (1996), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997)). " 'The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract.' " *Pantazes, supra,* 77 Md.App. at 720, 551 A.2d 916 (quoting *Goldberg v. Goldberg,* 290 Md. 204, 212, 428 A.2d 469 (1981)); *see also Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 340, 731 A.2d 441 (1999); *Calomiris v. Woods,* 353 Md. 425, 435–36, 727 A.2d 358 (1999); *Adloo v. H.T. Brown Real Estate, Inc.,* 344 Md. 254, 266, 686 A.2d 298 (1996); *Nicholson Air Servs., Inc. v. Board of County Comm'rs,* 120 Md.App. 47, 63, 706 A.2d 124 (1998); *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.,* 113 Md.App. 540, 554, 688 A.2d 496 (1997); *Shriver v. Carlin & Fulton Co.,* 155 Md. 51, 64, 141 A. 434 (1928). " '[W]here a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed.' " *Pantazes, supra,* 77 Md.App. at 720, 551 A.2d 916 (quoting *Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 328, 301 A.2d 12 (1973)). The language of the contract "must be construed as a whole, and effect given to every clause and phrase, so as not to omit an important part of the agreement." *Baltimore Gas & Elec.,* 113 Md.App. at 554, 688 A.2d 496; *see Bausch & Lomb, Inc. v. Utica Mutual Ins. Co.,* 330 Md. 758, 779, 625 A.2d 1021 (1993).

 Whether a contract is ambiguous is a question of law. *Ashton,* 354 Md. at 341, 731 A.2d 441; *Calomiris,* 353

Md. at 434, 727 A.2d 358. Contractual language is considered ambiguous "if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris*, 353 Md. at 436, 727 A.2d 358; *accord Ashton*, 354 Md. at 340, 731 A.2d 441; *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 596, 578 A.2d 1202 (1990); *see Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 389, 488 A.2d 486 (1985); *Bernstein v. Kapneck*, 290 Md. 452, 458, 430 A.2d 602 (1981); *Pantazes*, 77 Md.App. at 718–19, 551 A.2d 916.

This Court's decision in *Pantazes v. Pantazes, supra*, 77 Md.App. 712, 551 A.2d 916, is of help to us in addressing the first sub-issue in this case. In *Pantazes*, Michael Pantazes was charged with malicious destruction of property for damage he allegedly inflicted on a rental car. One Dean Pantazes was the source of the accusation; he had informed an employee of the rental car company that he had seen Michael scratch the car. When Michael appeared in the district court for trial, the State dismissed the charges against him.

Soon thereafter (and well within three years), Michael filed in the district court a petition for expungement of records pursuant to § 737. Attached to the petition was a General Waiver and Release that in all relevant respects was identical to the Form 4–503.2 General Waiver and Release signed by the appellant in the case *sub judice*. (When Michael filed his petition, § 737 provided that he could not do so earlier than three years after the dismissal without filing a written General Waiver and Release.) The district court granted the petition and ordered the expungement of all police and court records "pertaining to the arrest, detention or confinement on or about 1/20/85." *Pantazes, supra*, 77 Md.App. at 715, 551 A.2d 916.

Michael then brought a civil action for malicious prosecution and defamation against Dean. In the midst of trial, Dean moved for summary judgment, on the ground of release. The trial court denied the motion, on the ground that Michael had not been subjected to any arrest, detention, or confinement, and therefore the General Waiver and Release was of no

effect. The jury returned a verdict against Dean, who then appealed the judgment.

This Court affirmed the judgment on the defamation claim, but reversed on the malicious prosecution claim, on the ground of release. We held that although the language of the General Waiver and Release was ambiguous when read in isolation, when read in light of the circumstances of its formation and the § 737 expungement petition filed soon after it was signed, it clearly evidenced an intention by Michael and the State "to satisfy the § 737 requirement that he release 'any person from tortious conduct arising from the charge' in general; ... includ[ing] his claim for malicious prosecution." 77 Md.App. at 723, 551 A.2d 916. We went on to state:

> We hold that the "General Waiver and Release" Md. Rules Form 4–503.2, when filed as part of a petition for expungement of records under Art. 27 § 737, releases all claims which may arise against any person by reason of his or her being investigated, arrested, detained, or confined for, or charged with, a crime. It is not a condition precedent to the operation of the general release that the petitioner be subjected to confinement in jail or prison.

*Id.*

The case at bar, like *Pantazes,* involves a situation in which expungement of records clearly is controlled by § 737, but the language of the General Waiver and Release, because it predates the conforming changes adopted in 1998, quotes and makes reference to § 736. Also like in *Pantazes,* the intentions of the parties to the General Waiver and Release in this case are clear, insofar as the application of § 737 is concerned, from the surrounding circumstances in which the document was signed, including the actions taken by the appellant contemporaneous to the signing of the General Waiver and Release. The State and the appellant, who was represented by counsel, knew that the appellant had been charged with a crime, so that § 736 would not apply to any petition for expungement he might file; and that the charges against him were being *nolle prossed,* so that, if he wanted to have them

expunged in less than three years, he could only do so by "fil[ing] with the petition [for expungement] a written [G]eneral [W]aiver and [R]elease, in proper legal form, of all claims [he may have had] against any person for tortious conduct arising from the charge." § 737(d)(2)(i). The appellant completed and filed his expungement petition, under § 737, at the same time that he signed the General Waiver and Release. Thus, all parties to that document plainly intended that the charges against the appellant would be *nolle prossed* and the appellant would be permitted to file an immediate petition in the district court for expungement of records in exchange for his releasing all claims he might have had against Magee and the MCPD (and its officers, agents, and employees) for tortious conduct arising from the charges.[3]

 Having concluded that the parties to the General Waiver and Release that the appellant signed intended, by its language, to effect a "General Waiver and Release" pursuant to § 737, we next address the second sub-issue. Given that the terms of the General Waiver and Release were governed by § 737, did the undisputed facts establish as a matter of law that the conditions for the General Waiver and Release were satisfied, so it was effective and not void? The appellant argues that because the General Waiver and Release was intended by the parties to be governed by § 737, the conditions that had to be met for it to become operative included that all records capable of being expunged under § 737 must have been expunged. Therefore, if the DHHS, DSS, and OIA documents fell within the ambit of § 737, but were not expunged, the conditions were not satisfied, and the General Waiver and Release was void. We disagree.

---

3. As we explained in *Pantazes,* the reason that a general tort release is required for a petition for expungement to be filed in less than three years is that limitations will not have run; permitting the records pertaining to a charge to be expunged in less than three years without requiring that a release be given would expose the potential defendants in a tort action arising out of the charge to the unfairness of having to defend against a claim when the records pertaining to it have been destroyed or made inaccessible. 77 Md.App. at 719, 551 A.2d 916.

It is not necessary for us to decide whether the records of DHHS, DSS, and OIA with which the appellant is concerned are "other records maintained by the State of Maryland and its subdivisions, pertaining to the charge[,]" under § 737(a), as he contends, because even assuming they are, the conditional language of the General Waiver and Release does not have the meaning the appellant ascribes to it. The General Waiver and Release was "conditioned on the expungement of the record" of Davis's arrest, detention, confinement, and charges, under § 737, and on "compliance with" section 737. We must examine the substance of § 737 and the procedure for obtaining an order for expungement under that statute, as explicated in Md. Rules 4–504 through 4–512, to determine the precise meaning of that conditional language.

As explained above, section 737 gives a person who was charged with a crime the right to file a petition to expunge "police records, court records, and other records maintained by the State . . . and its subdivisions, pertaining to the charge," in certain enumerated situations, and at certain enumerated times. Unlike a notice and request for expungement under § 736, which is filed with a law enforcement agency, *see* § 736(a), a petition for expungement must be filed with the court in which the charge was pending. § 737(c). Thus, a § 737 petition is not an application to a State or local agency to expunge records—it is an application to the court in which the charge was brought to issue an order directing that records be expunged. The § 737 petition must be served on the State's Attorney, who then has 30 days in which to file an objection. § 737(i). If no objection is filed in that time frame, "the court shall enter an order requiring the expungement of police records and court records pertaining to the charge." § 737(i). The order for expungement "shall be substantially in the form set forth" as form 4–503.2, "as modified to suit the circumstances of the case." Md. Rule 4–508(a).

In the case *sub judice,* the appellant's petition for expungement of records asked the district court to

enter an Order for expungement of all police and court records pertaining to the above arrest, detention, confinement and charge.

Apparently, the State's Attorney did not object to the petition, and the district court granted it, without holding a hearing.

As is evident from the above-quoted language, the appellant did not ask the district court to enter an order for expungement of records other than "police and court records." In other words, the appellant did not modify the petition, as he was permitted to do, to request an expungement order either for "other records maintained by the State of Maryland and its subdivisions," § 737(a), or, more specifically, for records of the DHHS, DSS, or any other State agency. Section 737 draws a distinction between "police records," "court records," and "other records maintained by the State of Maryland and its subdivisions," so as to make plain that a request for "police and court records" does not include a request for "other records." Moreover, as we have explained, § 735 sets forth definitions for, among other terms, "court records" and "police records." Those definitions by plain reading do not encompass records of DHHS or DSS. "Court records" are those "official records maintained by the clerk or other court personnel pertaining to a criminal proceeding." § 735(b). "Police records" are, with exceptions, "all official records maintained by a law enforcement agency of the Central Repository pertaining to the arrest and detention of or further proceeding against a person on a criminal charge or for a suspected violation of the criminal law."

Because expungement of records under section 737 can occur only upon petition and the issuance of an order for expungement, and not by independent acts of the State's Attorney, court personnel, or law enforcement authorities, the conditions of "expungement" and "compliance" that were required to be fulfilled for the General Waiver and Release in this case to be effective necessarily were conditions that had to be fulfilled upon issuance of a court order for expungement. In other words, the conditions would be satisfied by the

MCPD, Magee, and any other person or entity complying with a court order directing them to expunge records. To the extent that the appellant wanted to have DHHS and DSS records pertaining to the child sexual abuse allegation and charges against him expunged, and to the extent that he was of a mind that he was entitled by § 737 to have those records expunged, it was incumbent upon him to ask the district court to order them expunged. Again, he did not make that request. Accordingly, there was and could not be a factual basis for the appellant's contention that a condition precedent to the General Waiver and Release was not satisfied because the DHHS and DSS records were not expunged; the only records required to be expunged were those ordered expunged—and DHHS and DSS records were not ordered expunged because the appellant did not ask for them to be.[4]

The issue respecting the OIA records is somewhat different because those records are "official records maintained by a law enforcement agency," and thus meet the first prong of the definition of a "police record." We conclude, nevertheless, that expungement of the OIA records was not required by the district court's expungement order, as a matter of law, and therefore the failure to do so did not make the General Waiver and Release void.

The order of expungement was issued by the district court sometime before October 15, 1997. The OIA records that the appellant argues should have been expunged did not exist then. Indeed, they were not created until March 1998, some four and one-half months later, when Lt. Young prepared the "OIA Case Update" and transcript of his written remarks for

---

4. One of the appellant's central arguments—that records of DHHS and DSS fall within the scope of the "other records" language of § 737(a), properly could have been raised and decided in the district court case if the appellant had included those records in his petition for expungement. If the district court had denied the petition insofar as those records were concerned, the appellant could have taken an appeal and the issue would have been squarely presented. The issue is not squarely presented here, for the reasons we have explained. We note, however, that the appellant is not precluded from filing another petition for an expungement order for those records.

presentation at the Montgomery County council hearing. The "police records" encompassed in the district court's expungement order could not have included records not even in existence when the order was issued. Accordingly, there were no facts put forth by the appellant to support his assertion that the MCPD failed to comply with the expungement order.[5]

## II.

The appellant also contends that the circuit court erred in granting summary judgment in favor of Magee because the Maryland expungement statutes are unconstitutional, in that they imposed upon him an obligation to forfeit his constitutional right to sue the State as a condition to obtaining expungement of his records. He argues that a State may not condition the receipt of a government benefit on the waiver of a constitutional right. *See Dolan v. City of Tigard,* 512 U.S. 374, 394, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) ("under the well settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit where the property sought has little or no relationship to the benefit"); *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (the government may not deny a person a benefit "on a basis that infringes his constitutionally protected interests"). He maintains that there is no legitimate State interest in conditioning expungement on a release of the State and its agents and employees from liability.

*Newton v. Rumery,* 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), is instructive on this issue. In that case, Rumery relinquished his personal right to sue the town of Newton, New Hampshire, in exchange for all criminal charges against him being dismissed. The issue before the Supreme Court was whether such a "release-dismissal" agreement was unenforceable as against public policy. The Court agreed that in

---

**5.** We express no opinion as to whether the OIA documents the appellant contends should have been expunged are documents excluded from the definition of "police records," in § 735(e).

certain instances a release-dismissal agreement "may tempt prosecutors to bring frivolous charges, to protect interests of other officials" but concluded that "a *per se* rule of invalidity fails to credit other relevant public interests and improperly assumes prosecutorial misconduct." *Id.* at 385, 107 S.Ct. 1187 (footnotes omitted). The Court stated:

> In many cases a defendant's choice to enter into a re-lease-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action. Rumery's voluntary decision to enter this agreement exemplifies such a judgment.... The benefits of the agreement to Rumery are obvious: he gained immunity from criminal prosecution in consideration of abandoning a civil suit that he may well have lost.

*Id.* at 394, 107 S.Ct. 1187. The Court held that because Rumery was represented by counsel, personally benefitted from the agreement, and voluntarily waived his right to sue under the release-dismissal statute, the agreement did not adversely affect the public interest and was valid. 480 U.S. at 398, 107 S.Ct. 1187.

The expungement statutes at issue in this case, to the extent they deny any benefit of the law at all, do so in a much less burdensome way than was at issue in *Rumery.* As we already have explained, under § 737, had the appellant waited three years from the date the charge against him was *nolle prossed* to petition for expungement, he would not have been required to release any related tort claims he might have had. The law only requires a petitioner under § 737 to execute a General Waiver and Release when a case has been *nol prossed* if the petition is filed within the three-year limitations period for tort actions. A person wishing to have his record expunged but not wanting to release his potential tort claims need only wait three years to petition for expungement. The reason potential tort claims must be released before records will be expunged in the three-year period, as we have explained, is that without such a release, potential defendants could be placed in the position of having to defend themselves

against claims when the records they would need to do so had been destroyed or made inaccessible at the plaintiff's request.

In this case, the appellant made a voluntary and rational decision, with the advice of counsel, to release his potential tort claims in exchange for obtaining immediate expungement of records. "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. *McMann v. Richardson*, 397 U.S. 759, 769, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *Newton*, 480 U.S. 386, 393–94, 107 S.Ct. 1187, 94 L.Ed.2d 405; *Crampton v. Ohio, decided with McGautha v. California*, 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). The requirement in § 737 that a defendant charged with a crime release potential related tort claims if the charge is *nolle prossed* and he seeks to expunge the records pertaining to it before limitations would expire on the potential claims is rationally based and not unconstitutional.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**