## EXPUNGEMENT

**LICENSING RECORDS – WHETHER EXPUNGEMENT OF THE RECORDS OF A CRIMINAL CONVICTION AFFECTS PROFESSIONAL LICENSING DISCIPLINE THAT RELIED ON THE CONVICTION – WHETHER THE RELATED LICENSING RECORDS MUST BE EXPUNGED**

October 6, 2025

*Stephen Conti, LMT*
*Chair, State Board of Massage Therapy Examiners*

*Winnie D. Moore, LCPC*
*Chair, State Board of Professional Counselors and Therapists*

*Lawrence Franklin*
*Chair, State Board of Barbers*

On behalf of your respective boards, you requested an official opinion of the Attorney General on how expungement of a criminal conviction affects earlier professional license discipline that relied on the conviction. Various professional licensing boards, including yours, can suspend or revoke a license, or otherwise discipline the licensee, if the licensee is convicted of specific types of crimes. Meanwhile, Maryland courts can expunge certain criminal convictions, usually a specified number of years after completion of the sentence, including some convictions that might be the basis of disciplinary action by professional boards. When a conviction is expunged, certain records of the conviction must either be destroyed or removed from public access. Would-be employers, schools, and licensing agencies also may not ask applicants about expunged convictions.

You asked what happens if a licensee is subject to discipline based on a criminal conviction (the fact of conviction itself rather than the conduct underlying the conviction) but the conviction is later expunged. Specifically, you asked whether "regulatory boards have any duty to rescind, vacate, or otherwise remove from public view any disciplinary orders based solely on a crime or crimes expunged after the issuance of those board orders.

In our opinion, expungement of a conviction does not require a licensing board to rescind or vacate disciplinary action that relied on the conviction. The expungement statute provides for records of an expunged conviction to be sealed and prohibits asking about expunged convictions in certain contexts. But nothing in the statute suggests that expungement retroactively voids or invalidates the original criminal conviction itself. And if the conviction remains in existence, the basis for the licensing board's order remains in existence as well.

That said, some specific categories of documents in the record of a license discipline proceeding arising from a criminal conviction may be eligible for expungement. Although the standard expungement order found in the Maryland Rules mentions only police and court records and does not reach licensing agency records at all, the text of the expungement statute leaves open the possibility of expungement of "other records" beyond police and court records when requested in the expungement petition. Even then, though, the "other records" in a licensing file eligible for expungement are likely only those records that originated as police or court records but have come into the hands of the licensing agency. Thus, for example, a copy of an indictment in the files of a licensing board could be expunged, but the administrative order of a licensing board revoking a license could not be. We recognize, however, that these conclusions are not free from doubt, so the General Assembly may wish to consider clarifying the scope and effects of expungement in Maryland.

# I
# Background

## A. *Expungement as a Remedy for Collateral Consequences of Criminal Conviction*

A criminal record is a heavy burden. Once someone convicted of a crime completes their sentence, they have, as it is commonly said, paid their debt to society. But "collateral consequences" of the conviction can linger long after the sentence ends. "Collateral consequences are the penalties, disabilities, or disadvantages imposed upon a person as a result of a criminal conviction" as distinguished from the "direct consequences imposed as part of the court's judgment at sentencing." Collateral Consequences Workgroup, *Final Report* 1 (Dec. 1, 2016) ("Collateral Consequences Report").

Some of these consequences stem from laws that explicitly impose the consequence. For example, a criminal conviction can render someone legally ineligible for certain public housing, welfare, and healthcare benefits. *See, e.g.*, Mackenzie J. Yee, Note, *Expungement Law: An Extraordinary Remedy for an Extraordinary Harm*, 25 Geo. J. on Poverty L. & Pol'y 169, 173-74 (2017). Or, as discussed further below, a criminal conviction can trigger the denial or revocation of a professional license. *Infra* Part I.C. In Maryland, a criminal conviction can affect, among other things, one's right to serve on a jury, capacity to serve as personal representative of an estate, or ability to adopt a child. *See* Md. Code Ann., Cts. & Jud. Proc ("CJP") § 8-103(b)(4); Md. Rules 6-122, 9-103(b)(1)(N). The American Bar Association identifies 166 permanent legal consequences that Maryland law may impose for any conviction, and 324 consequences for a felony conviction. Am. Bar Ass'n, *National Inventory of Collateral Consequences of Conviction*, https://niccc.nationalreentryresourcecenter.org/ (last visited Sept. 29, 2025) (select "Maryland" for "Jurisdiction," "Any misdemeanor" or "Any felony" for "Offense type," and "Indefinite" for "Duration").

But the stigma of a criminal record can weigh even more heavily than these formal disabilities. *See, e.g.*, Maryland Equitable Justice Collaborative, *Breaking the 71%: A Path Toward Racial Equity in the Criminal Legal System* 54 (2024) ("MEJC Report"); Wayne A. Logan, *Informal Collateral Consequences*, 88 Wash. L. Rev. 1103, 1104-05 (2013). Would-be employers, landlords, and others can easily look up criminal records from both official sources and private background check services. *See* Logan, *supra*, at 1107-08; Anna Kessler, *Excavating Expungement Law: A Comprehensive Approach*, 87 Temp. L. Rev. 403, 411-12 (2015); Collateral Consequences Report at 10, 12. That easy access subjects people with criminal records to discrimination in almost every facet of life. *See, e.g.*, MEJC Report at 54; Logan, *supra*, at 1107-09; Yee, *supra*, at 170-71. "These compounded barriers not only undermine an individual's ability to rebuild their life but also perpetuate cycles of recidivism, which places strain on families, communities, and the criminal legal system itself." MEJC Report at 54. The scope of the problem is vast. By some estimates, one third of the U.S. adult population has a record of arrest and/or conviction. Yee, *supra*, at 171. And the burden falls disproportionately on communities that are exposed at higher rates to the criminal justice system. *See* MEJC Report at 7, 54.

Expungement aims to address this problem. Almost every state allows expungement of criminal records in at least some

circumstances. *See* Restoration of Rights Proj., *50-State Comparison: Expungement, Sealing & Other Record Relief* (last updated July 2024) ("50-State Comparison"), https://ccresourcecenter.org/state-restoration-profiles/50-state-comparisonjudicial-expungement-sealing-and-set-aside-2-2/. Expungement typically shields the official records of a conviction from public access and also limits access by government and law enforcement agencies. *See* Yee, *supra*, at 182-83; Brian M. Murray, *A New Era for Expungement Law Reform? Recent Developments at the State and Federal Levels*, 10 Harv. L. & Pol'y Rev. 361, 362 (2016). Typically, too, the beneficiary of expungement (the "expungee") may deny the existence of the conviction if asked, for example, on a job or college application. *See* Yee, *supra*, at 182-83. Other details that vary from state to state include what convictions are eligible, the procedures required to obtain expungement, and whether expungement has any further effects, such as eliminating collateral consequences imposed by law. *See* 50-State Comparison.

Expungement does not erase all collateral consequences of a conviction, however. First, expunged records often are not destroyed, but may be retained for certain law-enforcement purposes. *E.g.*, Kessler, *supra*, at 433. Thus, some commentators have argued that "sealing" is a more accurate term than "expungement." *Id.* Second, the scope of expungement, meaning what public records are expunged or sealed and what collateral consequences are removed, depends on the statute. Legislatures crafting expungement remedies must strike a balance among the reduction of collateral consequences, protection of the public, and preservation of records for law-enforcement and other purposes. *See, e.g.*, *Ready v. Grady*, 243 Cal. App. 2d 113, 115-16 (1966); *E.A. v. New Jersey Real Estate Comm'n*, 208 N.J. Super. 65, 68 (1986); *D.A. v. State*, 58 N.E.3d 169, 173 (Ind. 2016). This means some collateral consequences usually remain even after expungement. Finally, *non*-governmental records are often unaffected by expungement. This includes government records harvested into private databases. *See* Murray*, supra*, at 377-78. Data brokers often fail to update their records to reflect the expungement of a conviction. *Id.*

## B. *Maryland's Expungement Law*

Maryland's expungement statute is codified at Title 10, Subtitle 1 of the Criminal Procedure Article (the "Expungement Law"), with implementing court rules found in Title 4, Chapter 500 of the Maryland Rules. The Expungement Law focuses on

expungement of "police records" and "court records." Under the law, "expunge" means "to remove information from public inspection in accordance with [the Expungement Law]." Md. Code Ann., Crim. Proc. ("CP") § 10-101(e). And "expungement," as to a court record or a police record, means:

> [R]emoval from public inspection:
>
> (1) by obliteration;
>
> (2) by removal to a separate secure area to which persons who do not have a legitimate reason for access are denied access; or
>
> (3) if access to a court record or police record can be obtained only by reference to another court record or police record, by the expungement of it or the part of it that provides access.

*Id.* (f); *see also* Md. Rule 4-502(e).

As noted, the scheme focuses on the expungement of court records and police records, both of which are defined terms. "[C]ourt record," as relevant here, means "an official record of a court that the clerk of a court or other court personnel keeps about . . . a criminal proceeding," and includes "an index, docket entry, charging document, pleading, memorandum, transcription of proceedings, electronic recording, order, and judgment." CP § 10-101(d); *see also* Md. Rule 4-502(d). And "police record" means, in relevant part, "an official record that a law enforcement unit, booking facility, or the Central Repository maintains about the arrest and detention of, or further proceeding against, a person for . . . a criminal charge [or] a suspected violation of a criminal law." CP § 10-101(*i*); *see also* Md. Rule 4-502(h).

Although the Expungement Law provides for expungement of records of a variety of cases not resulting in conviction, such as arrests without charges, cases terminated by dismissal or nolle prosequi, and acquittals, CP §§ 10-103, 10-103.1, 10-104, 10-105(a), we will focus here on expungement of records of convictions, as these are most relevant to your question. Records of a conviction can be expunged in the following circumstances:

- When a person was convicted of only one criminal act, not a crime of violence, and received a full and unconditional pardon from the Governor. CP § 10-105(a)(8).

- When a person was convicted of certain minor public-order offenses, including public urination and loitering. *Id.* (a)(9).

- When a person was convicted of a crime, but the underlying act is no longer a crime. *Id.* (a)(11).

- When a person was convicted of simple cannabis possession. *Id.* (a)(12).

- When a conviction was vacated on the ground that the defendant was a victim of human trafficking. *Id.* (a)(13); CP § 8-302.

- When a person was convicted of one of a lengthy list of specified misdemeanors. CP § 10-110(a)(1).

- When a person was convicted of one of a shorter list of specified felonies, *id.* (a)(2), specifically: Theft under § 7-104 of the Criminal Law Article; possession with intent to distribute a controlled dangerous substance under § 5-602 of the Criminal Law Article; or burglary (except first degree burglary with intent to commit a crime of violence) under §§ 6-202(a), 6-203, or 6-204 of the Criminal Law Article.

Expungement is available regardless of whether the conviction resulted from a guilty verdict at trial or a guilty plea, because the term "convicted" encompasses both scenarios. *See Myers v. State*, 303 Md. 639, 642-43 (1985). Also, if a guilty plea to an offense not enumerated above leads to probation before judgment, the record is eligible for expungement, assuming successful completion of probation. *See* CP § 10-105(a)(3), (c)(2), (e)(4).[1]

---

[1] The Expungement Law does not expressly address cases where a defendant pleaded nolo contendere. A plea of nolo contendere subjects the defendant to sentencing but does not result in "conviction" in the strict sense. *E.g.*, *Hinton v. State*, 257 Md. App. 562, 582 & n.6 (2023). However, we doubt the General Assembly intended that a guilty verdict or guilty plea would be eligible for expungement, whereas a nolo plea to the same charge would not. Thus, we think that, for purposes of the

An individual with a qualifying conviction becomes entitled to expungement after a specified waiting period. The waiting period usually begins upon completion of the sentence. *See* CP §§ 10-105(c), 10-110(c). Once eligible, the individual must file a petition in the last court to have jurisdiction over the case. *See* CP §§ 10-105(b), 10-110(b); *see also* Md. Rule 4-504(a). Specifically, an eligible person "may file a petition listing relevant facts for expungement of a police record, court record, or other record maintained by the State or a political subdivision of the State." CP §§ 10-105(a), 10-110(a).

Unless the State's Attorney or a law enforcement agency objects, the court "shall pass an order requiring the expungement of all police records and court records about the charge." CP §§ 10-105(d)(2), 10-110(e)(3); *see also* Md. Rule 4-507(b). If there is an objection, the court must hold a hearing, and if it finds the petitioner entitled to expungement, "shall order the expungement of all police records and court records about the charge." CP §§ 10-105(e)(2), 10-110(f)(2); *see also* Md. Rule 4-508. Before granting expungement, the court must consider the petitioner's success at probation, parole, and mandatory supervision, and whether any court-ordered restitution has been paid. CP §§ 10-105(e)(5), 10-110(f)(2)(iii)-(iv). Under CP § 10-110, which allows expungement of a broader array of misdemeanors and felonies, the court must also determine that the petitioner is not a risk to public safety and that expungement would be in the interest of justice. CP § 10-110(f)(2)(iii), (v). "[E]very custodian of the police records and court records that are subject to [an] order of expungement" must certify compliance within sixty days. CP §§ 10-105(f), 10-110(h); *see also* Md. Rule 4-510.

Some police records and court records are expressly exempt from expungement. Court records exempt from expungement include "the published opinion of a court," "a cash receipt or disbursement record that is necessary for audit purposes," and "a transcript of court proceedings made by a court reporter in a multiple defendant case." CP § 10-102(c)(2)-(4). Police records exempt from expungement include "an investigatory file" and "a record of the work product of a law enforcement unit that is used solely for police investigation." CP § 10-102(c)(5)-(6).

---

Expungement Law, the term "convicted" likely includes a nolo plea, as is true in some other contexts. *See, e.g.*, Md. Rule 5-609(d); *Curry v. Department of Pub. Safety & Corr. Servs.*, 102 Md. App. 620, 625 (1994); *see also Curry*, 102 Md. App. at 627 n.3 (noting that the meaning of the word "conviction" depends on context).

But with these limited exceptions, records subject to expungement must either be destroyed or removed to a limited-access secured area. CP § 10-101(f); *see also* Md. Rule 4-512. "A person may not open or review an expunged record or disclose to another person any information from that record without a court order[.]" CP § 10-108(a). Also, an employer or educational institution may not require an applicant for a job or for admission to disclose information about expunged convictions. CP § 10-109(a)(1)(i), (a)(3)(i). Nor may a State or local government agency require an applicant for a license, permit, registration, or government service to disclose information about convictions for which records have been expunged, or deny an application on the basis of the person's refusal to disclose an expunged conviction. CP § 10-109(a)(1)(ii), (a)(3)(ii). Violation of any of these restrictions on the use of expunged information is a misdemeanor. CP §§ 10-108(d)(1), 10-109(b)(1).[2]

The General Assembly first enacted general expungement legislation in 1975. 1975 Md. Laws, ch. 260. It did so apparently in response to the then-Court of Appeals' decision in *Doe v. Commander, Wheaton Police Dep't*, 273 Md. 262 (1974), suggesting the possibility of an inherent judicial authority to expunge in the absence of statutory authority, *see Mora v. State*, 123 Md. App. 699, 710 (1998), *aff'd*, 355 Md. 639 (1999). Since 1975, the Legislature has gradually broadened the availability of the remedy. In particular, it has expanded what dispositions and what crimes are eligible for expungement. For example, under the original statute, records of convictions could not be expunged. In 1982, the General Assembly allowed expungement of records of pardoned convictions. 1982 Md. Laws, ch. 872. In 2008, it extended expungement to convictions of certain minor public-order offenses. 2008 Md. Laws, ch. 616. And in 2016, under the Justice Reinvestment Act, it extended expungement to a much longer list of misdemeanor convictions, with a 2018 amendment adding certain felony convictions. 2016 Md. Laws, ch. 515; 2018 Md. Laws, ch. 143. More recently, the Legislature has focused on expungement of cannabis-related charges, including automatic expungement in certain circumstances. *See* CP § 10-105.1; *e.g.*, 2021 Md. Laws, ch. 680.

---

[2] A separate statute allows for the "shielding" of certain convictions. CP § 10-301(f). To "shield" a conviction means to render related court and police records "inaccessible by members of the public." *Id.* (e). However, access to shielded records is much broader than access to expunged records. *See id.* § 10-302. As relevant here, shielded records are accessible to professional licensing agencies. *See id.* (b)(2).

## C. *Professional License Discipline as a Collateral Consequence*

Many occupations and professions in Maryland require licenses, from physicians to cosmetologists to maritime pilots. Md. Code Ann., Health Occ. ("HO") § 14-301; Md. Code Ann., Bus. Occ. & Prof. ("BO&P") §§ 5-301, 11-401. And for many of these occupations and professions, the licensing authority may suspend or revoke a license for certain criminal convictions.

Relevant here, the Health Occupations Article gives various health professions boards the authority to suspend or revoke a license if the licensee is convicted of, or pleads guilty or nolo contendere to, a felony or a crime involving moral turpitude.[3] For some professionals, like physicians, license revocation is mandatory upon conviction of (or plea to) a crime of moral turpitude. HO § 14-404(b).[4] Where revocation is not mandatory, the licensee typically has a right to a hearing on whether the conviction justifies the proposed discipline. *See Oltman v. Maryland State Bd. of Physicians*, 162 Md. App. 457, 489 (2005); *see also* Md. Code Ann., State Gov't § 10-226(c). "Each health

---

[3] *See, e.g.*, Md. Code Ann., Health Occ. ("HO") §§ 1A-309(7) (acupuncturists), 9-3A-12(b)(4) (assisted living managers), 2-314(4) (audiologists, hearing aid dispensers, and speech-language pathologists), 17-6A-19(3) (behavior analysts), 8-6D-10(a)(4) (certified midwives), 3-313(5) (chiropractors), 4-315(c)(13) (dental hygienists), 4-315(a)(4) (dentists), 5-311(6) (dietician-nutritionists), 8-6C-20(a)(4) (direct-entry midwives), 8-6B-18(a)(6) (electrologists), 21-312(b)(5) (environmental health specialists), 6-308(a)(4) (massage therapists), 7-316(a)(4) (morticians), 7-604(4) (mortuary transport service providers), 2-4A-14(3) (music therapists), 8-316(a)(4) (nurses), 8-6A-10(a)(4) (nursing assistants), 9-314(b)(4) (nursing home administrators), 10-315(6) (occupational therapists), 11-313(3) (optometrists), 12-313(b)(22) (pharmacists), 12-6B-09(22) (pharmacy technicians), 13-316(6) (physical therapists), 16-311(a)(3) (podiatrists), 17-509(10) (professional counselors), 18-313(3) (psychologists), 12-6D-11(15) (registered pharmacy interns), 20-313(b)(4) (residential childcare program professionals), 19-311(7) (social workers).

[4] We need not comprehensively define "moral turpitude" here, but courts have called the concept "rather broad" in the professional licensing context. *See Oltman v. Maryland State Bd. of Physicians*, 162 Md. App. 457, 483 (2005). The term can include crimes involving a serious breach of professional standards and casting doubt on public confidence in the profession, *see Burke v. Maryland Bd. of Physicians*, 250 Md. App. 334, 350, 353 (2021) (physician who wrote multiple prescriptions for non-patients), but can also include crimes not directly related to professional practice, *see Brun v. Lazzell*, 172 Md. 314 (1937) (indecent exposure with underage victims).

occupations board shall post on the board's Web site each final, public order for a disciplinary sanction issued to a licensee or certificate holder." HO § 1-607.

Meanwhile, the Business Occupations and Professions Article usually provides for license discipline upon conviction of a felony or a misdemeanor directly related to the licensee's fitness to practice.[5]  There are some minor variations.[6]  Under most of these provisions, the board must consider the specific circumstances of the crime and its relationship to the licensed activities.  *See, e.g.*, BO&P § 2-315(b); *see also Pautsch v. Maryland Real Estate Comm'n*, 423 Md. 229, 260-62 (2011).

To recap, then, most licenses under the Health Occupations Article and Business Occupations and Professions Article can be revoked or suspended if the holder is convicted of a felony.  And most can also be revoked either for a misdemeanor of moral turpitude, or a misdemeanor related to fitness to practice.  Although you asked about these two Articles in particular, statutes elsewhere in the Code have similar provisions.  *See, e.g.*, Md. Code Ann., Agric. § 2-310(3) (veterinarians).  In addition, the same underlying conduct that led to the conviction might serve as the basis for disciplinary action by licensing agencies on separate grounds, but we focus here on disciplinary action based solely on the conviction itself, as that was the premise of your question.

---

[5] *See, e.g.*, BO&P §§ 2-315(a)(1)(iii), (b) (accountants), 16-701.2(a)(3), (c) (appraisal management companies), 3-311(a)(1)(vii), (b) (architects), 4-314(a)(1)(viii), (b) (barbers), 5-314(a)(1)(vii), (b) (cosmetologists), 6-316(a)(1)(vi), (c) (electricians), 7-309(a)(1)(iv), (b) (foresters), 16-701.1(a)(4), (c) (home inspectors), 8-310(a)(1)(iii), (b) (interior designers), 9-310(a)(1)(iii), (b) (landscape architects), 11-409(a)(3), (e) (maritime pilots), 12-312(a)(1)(v), (b) (plumbers), 14-317(a)(1)(iii), (b) (professional engineers), 15-317(a)(1)(iii), (b) (professional land surveyors), 16-701(a)(1)(v), (b) (real estate appraisers), 19-408(a)(4) (security guards), 6.5-314(a)(1)(iii), (b) (stationary engineers).

[6] *See* BO&P § 17-322(b)(24), (d) (real estate brokers may be disciplined for a felony, misdemeanor related to fitness to practice, or crime that constitutes a violation of any provision of the real estate brokers statute); BO&P § 18-309(4) (security system technicians may be disciplined for a felony, theft offense, or crime of moral turpitude); BO&P § 20-314(a)(6) (private home detention monitors may be disciplined for a felony conviction); BO&P § 21-311(a)(3) (individual tax preparers may be disciplined for a misdemeanor or felony related to fitness to practice, as opposed to any felony).

Some of the crimes for which a licensee could be disciplined are potentially eligible for expungement under the Expungement Law. As we have noted, certain felonies are expungeable. CP § 10-110(a)(2). Other crimes that are expungeable might, depending on the facts, be crimes of moral turpitude or relate to fitness to practice. For example, in *Burke v. Maryland Board of Physicians*, a physician pleaded guilty to five misdemeanor counts of writing prescriptions outside the course of regular professional duties and in violation of professional standards, under § 5-902 of the Criminal Law Article. 250 Md. App. at 348-49. The licensing board determined that this was a crime of moral turpitude and revoked the physician's license. *Id.* at 353-54. A licensing board thus might impose discipline, such as a license suspension or revocation, on the basis of a conviction. Then, after the discipline has become final, a court might expunge the records of the crime that formed the basis of discipline. That scenario presents the question you asked, which we will turn to now.

## II
## Analysis

Your question is: when a licensing board bases a disciplinary order on a criminal conviction, and the records of the conviction are later expunged, must the board "rescind" or "vacate" the order, or otherwise "remove [it] from public view"? That question raises two related legal issues. First, when a court expunges a conviction, does that action invalidate or void any discipline that relied on the conviction? Second, does an expungement order under the Expungement Law reach the records of a licensing board's disciplinary action, such that, even if the discipline itself is not affected, the records reflecting the disciplinary action must be destroyed or removed from public access? We consider each question in turn.

### A. *Expungement of a Criminal Conviction Does Not Invalidate Earlier License Discipline that Relied on the Conviction*

To begin, we consider whether expungement invalidates or voids any discipline that relied on the conviction. For the reasons explained below, our view is that although expungement seals certain records of a criminal investigation, arrest, and conviction, expungement does not retroactively invalidate or void the conviction itself.

### 1. Expungement Does Not Retroactively Invalidate or Void the Underlying Conviction

Because expungement is a statutory remedy, the effect of expungement is a question of statutory interpretation. *See In re Cintron*, 265 Md. App. 481, 500-01 (2025). At one time, Maryland's highest court left open the question whether courts might have inherent or equitable authority to expunge criminal records. *See Doe*, 273 Md. at 275-76. But the enactment of the Expungement Law "obviated" any "common law right of expungement" and established the "primary remedial mechanism" in the area. *Reid v. State*, 239 Md. App. 1, 15 (2018). The expungement procedure derived from the Expungement Law is therefore "exclusive and mandatory" except in juvenile cases. *See* Md. Rule 4-501. So, in considering how expungement affects criminal convictions, the expungement statute controls. We thus apply the ordinary principles of statutory construction.

"'The cardinal rule of statutory construction is to ascertain and effectuate' the General Assembly's purpose and intent when it enacted the statute." *E.g.*, *Zukowski v. Anne Arundel County*, 490 Md. 243, 264 (2025) (citation omitted). This search for legislative intent begins with the statute's plain language. *Id.* It also considers context, looking at the statutory scheme as a whole and the underlying "purpose, aim or policy" of the legislation. *Id.* We may also examine other extrinsic evidence of intent, including legislative history. *E.g.*, *Blackstone v. Sharma*, 461 Md. 87, 113-14 (2018). But a court "will not read into the statute words that give it an interpretation that limits or extends its application beyond the words the Legislature used." *E.g.*, *Allen v. State*, 440 Md. 643, 671 (2014) (citation omitted).

In considering the effect of expungement, the natural place to begin is the language of the statutory provision defining "expunge" and "expungement." Expunge means "to remove information from public inspection in accordance with" the Expungement Law. CP § 10-101(e). And the definition of "expungement" elaborates on that theme, defining the term to mean removal of *records* from public inspection, generally by obliteration or removal to a "secure area." *Id.* (f). Expungement, then, concerns the protection and sealing of certain documents. It is "a form of record-keeping." *Cintron*, 265 Md. App. at 498. Nothing in this language suggests an intent to go further and invalidate or void the original conviction.

The other provisions of the Expungement Law that deal with expungement's effects also suggest that expungement does not

erase a conviction for all purposes. There are two such provisions. Section 10-108 governs access to expunged records and imposes penalties for their misuse, but it deals only with records. Similarly, § 10-109 protects information on expunged convictions from being disclosed, by preventing the expungement beneficiary from being compelled to disclose it, but only in specified situations. These provisions are limited in scope, and they would be unnecessary if expungement in general meant that a person would be treated for all purposes as though they had never been convicted. Again, the law protects specified records and information reflecting the conviction from disclosure. But to conclude that the conviction is invalidated would require a step further. We see no support in the law for that further step.

Indeed, the General Assembly has rejected the idea that expungement requires the State to behave for all purposes as though the conviction never happened. The Legislature specifically excluded certain items from expungement's reach, including court opinions, some trial transcripts, and police work product. CP § 10-102(c). As we will discuss further below, its focus was primarily on police and court records, *see infra* Part II.B, perhaps because they are the records that impose the greatest stigma on individuals or perhaps because an expungement process limited to police and court records would be more administrable. And it allowed for the review of even these records on a showing of good cause. CP § 10-108(b)(1). When the Legislature decided what expungement does and does not do, we must respect its policy judgment. *See, e.g.*, *Cintron*, 265 Md. App. at 502; *see also, e.g.*, *Ready*, 243 Cal. App. 2d at 115-16; *E.A.*, 208 N.J. Super. at 68; *D.A.*, 58 N.E.3d at 173.

The Appellate Court also has rejected the argument that expungement means across-the-board "erasure." *Cintron*, 265 Md. App. at 500-01. In *Cintron*, the Howard County police had investigated an alleged crime by a Baltimore City police officer and sent copies of evidence from the police record to the Baltimore City police. *Id.* at 487-88. The charge was later expunged. *Id.* But the expungement order did not include the Baltimore City police among the custodians required to expunge police records. *Id.* The City police later used its copies of the evidence in a disciplinary proceeding against the officer. The court held that this use of the evidence was proper, because the City police were never subject to an expungement order. *Id.* at 498-99. In the court's view, the "clear and unambiguous" language of the statute reflected a legislative "balance" between privacy and law-enforcement needs. *Id.* at 500-01. And under that clear language, the effect of

expungement is limited to the terms of an expungement order, even when that limitation means some public records of a conviction will remain unexpunged. *See id.* *Cintron* indicates that courts, to respect the legislative balancing of interests, will not expand the reach of expungement beyond what the statute "clear[ly] and unambiguous[ly]" provides. Because the statute makes no reference to expungement invalidating the original conviction, it would not have that effect.

The probation-before-judgment statute offers an illuminating contrast. That statute lets the court stay the entry of judgment in a criminal case and place the defendant on probation. CP § 6-220. When the defendant fulfills the conditions of probation, "the court shall discharge" them "without judgment of conviction," and the discharge is "not a conviction for the purpose of any disqualification or disability imposed by law." *Id.* § 6-220(*i*). The absence of equivalent language in the Expungement Law suggests that the General Assembly did not similarly intend that an expunged conviction would no longer be a conviction for any purpose. And even the probation-before-judgment statute does not authorize the court to set aside a final conviction once it has been entered. Rather, the defendant will avoid a "conviction" only in cases where the court never enters judgment to begin with; that is, where it stays entry of judgment and then dismisses the charges on completion of probation. *See Hall v. Prince George's County Democratic Cent. Comm.*, 431 Md. 108, 126, 130 (2013).

Courts in other states have also observed that expungement or sealing of criminal records is not equivalent to voiding or vacating the conviction. For example, a New York appellate court held that a statute that "simply create[d] a mechanism for restricting future access to existing records" of certain drug-related charges did not "contemplate any alteration of the underlying criminal judgment reflected in those records." *People v. M.E.*, 121 A.D.3d 157, 160 (N.Y. App. Div. 2014). The Supreme Court of Wisconsin similarly explained that expungement "of a conviction merely deletes the evidence of the underlying conviction from court records" and "does not invalidate the conviction," contrasting that concept with vacatur, which results from legal or factual flaws in the original proceedings and "invalidates the conviction itself." *State v. Braunschweig*, 384 Wis. 2d 742, 754-56 (2018). And along the same lines, the District of Columbia Court of Appeals observed that expungement "casts no doubt on the integrity of the conviction itself, but denotes a policy judgment to remove the conviction from a person's public record." *Hickerson v. United States*, 287 A.3d 237, 243 (2023). Although these opinions interpreted different

statutes with different language, they offer support for the general proposition that expungement and vacatur of conviction are different things.

To be clear, we do not address the prospective effects of expungement. That is, we do not consider what effects expungement may have on governmental actions taken after a court grants expungement. We conclude only that expungement does not actually vacate, retroactively invalidate, or render void ab initio, an earlier final judgment of conviction. The Expungement Law defines expungement's effects. And those effects do not include invalidating the underlying conviction.

> 2. *Because Expungement Leaves the Underlying Conviction in Existence, It Does Not Invalidate Discipline that Relied on an Expunged Conviction*

Given our conclusion that expungement does not invalidate the conviction itself, nothing requires the invalidation of a final administrative agency action that relied on a later-expunged conviction (assuming nothing else changed). The factual and legal basis of the administrative agency's action remains in existence.[7]

We reached a similar conclusion decades ago in the related context of gubernatorial pardons. 37 *Opinions of the Attorney General* 188 (1952). In that opinion, the Board of Dental Examiners had revoked a dentist's license for a crime of moral turpitude, but the Governor later pardoned that crime, and the Board asked about the status of the dentist's license following the pardon. *Id.* at 188-89. We concluded that the pardon did not restore the dentist's license, noting that [t]he pardon "contain[ed] nothing which indicate[d] that the conviction was erroneous." *See id.* at 191-93. So, although the dentist could have potentially applied for a new license under the standards governing a new

---

[7] We need not decide when an agency may have *discretion* to revisit a past disciplinary order on the ground that the underlying conviction was expunged. *See, e.g., Cinque v. Montgomery County Planning Bd.*, 173 Md. App. 349, 361 (2007) (discussing the inherent authority of administrative agencies to reconsider quasi-judicial decisions); 106 *Opinions of the Attorney General* 38, 48 n.10 (2021) (same). *But see Lawrence N. Brandt, Inc. v. Montgomery County Comm'n on Landlord-Tenant Affs.*, 39 Md. App. 147, 160-61 (1978) (holding that authority to reconsider a quasi-judicial decision ends once petition for judicial review is filed or time for judicial review expires). We conclude only that an agency is not *required* to do so, and that the expungement does not invalidate the agency action by operation of law.

application, he was not entitled to his old license back. *See id.* at 193. The reasoning of our 1952 opinion suggests that if a form of post-conviction relief does not call the validity of the original conviction into doubt, it does not invalidate license discipline based on the conviction.

Out-of-state authority supports the conclusion that expungement does not bear on the propriety of a license revocation when the expungement occurred after the licensing board's action. *See, e.g.*, *Schillerstrom v. State*, 180 Ariz. 468, 472 (Ariz. Ct. App. 1994); 1993 Ohio Op. Att'y Gen. 2-192, 1993 WL 486032, at *6, *8 (Nov. 16, 1993) ("[T]he sealing of a licensee's criminal conviction does not affect any prior disciplinary action taken by the agency against that licensee."); Or. Op. Att'y Gen. No. OP-2000-1, 2000 WL 992134, at *11-12 (July 11, 2000) (concluding that disciplinary board could disclose existence of, and reason for, disciplinary action even where underlying records were expunged); 1993-1994 Mich. Op. Att'y Gen. 89, 1994 WL 2269, at *3-4 (Jan. 4, 1994) (same); *cf. Wolfgram v. New Hampshire Dep't of Safety*, 169 N.H. 32, 37 (2016) (recognizing that although references to "habitual offender" status on driving record were subject to expungement under New Hampshire law, the status itself would not be). As with our opinion on the dentist's license, other jurisdictions recognize that where expungement does not call the validity of the original conviction into question, it does not affect administrative actions based on the conviction. *See Ballard v. Board of Trs. of Police Pension Fund*, 452 N.E.2d 1023, 1025 (Ind. Ct. App. 1983) (holding that because expungement under Arizona law did not invalidate the conviction, it did not require restoration of police officer's pension, which had been revoked for felony).

We therefore conclude that expungement of the records of a criminal conviction does not invalidate or vacate, or require the rescission of, disciplinary action by a licensing board that relied on the conviction. The General Assembly defined expungement as the protection and sealing of certain records and information. But we see no evidence that it intended the underlying convictions themselves would be vacated or retroactively voided. And that means administrative agency actions based on the original conviction, at least those that became final before the expungement order, retain their foundation.

**B.** ***Although Expungement Typically Reaches Only Police and Court Records, Some Limited Types of Records from License Discipline Proceedings May Be Subject to Expungement***

We must also consider whether, even if expungement does not invalidate license discipline that relied on a conviction, documents related to that discipline can or must be expunged, i.e., destroyed or protected from public disclosure under the Expungement Law. As we have discussed, expungement deals primarily with the confidentiality of records. It is thus possible that, even if expungement does not restore a license, it still requires the licensing board to destroy (or remove from public access) records about the revocation of the license.

However, as we will explain, we think only limited types of records from license discipline proceedings will be subject to expungement, for two reasons. First, the standard expungement order issued by Maryland courts only reaches police records and court records. Licensing boards' records fall into neither of those categories. Although the expungement statute also contemplates a request to expunge "other records" held by the State, an expungement order will not reach "other records" without a specific request. Second, even if the petitioner so requests, the term "other records" likely does not include records generated by a licensing board itself in the disciplinary process. Instead, it would likely reach only records that originated as court or police records and were received by the board. We turn now to flesh out those two points.

*1.     An Expungement Order Ordinarily Reaches Only Police and Court Records*

The standard form expungement order found in the Maryland Rules reaches only police records and court records. "An order for expungement of records shall be substantially in [this] form . . . as modified to suit the circumstances of the case." Md. Rule 4-508(a). The form order reads:

> Having found that [name] of [address] is entitled to expungement *of the police records* pertaining to that individual's arrest, detention, or confinement on or about [date], at [location], Maryland, by a law enforcement officer of the [law enforcement agency], *and the court records* in this action, it is . . .

> ORDERED that the clerk forthwith shall serve on *each custodian of police and court records* designated in this Order and on the Central Repository a copy of this Order together with a blank form of Certificate of Compliance; and it is further
>
> ORDERED that within 60 days after the entry of this Order or, if this Order is stayed, 30 days after the stay is lifted, the clerk and the following custodians of court and police records and the Central Repository shall (1) *expunge all court and police records pertaining to this action or proceeding in their custody* (2) file an executed Certificate of Compliance, and (3) serve a copy of the Certificate of Compliance on the applicant/petitioner/defendant[.]

Md. Rule, Form 4-508.1 (emphasis added).

Records held by a licensing board are not "police records" or "court records" within the meaning of the Expungement Law. The law defines these records not only in terms of their nature but also their custodian. Police records are "official record[s] that a law enforcement unit, booking facility, or the Central Repository maintains" about a person's arrest or detention. CP § 10-101(*i*). Records not in the custody of a law enforcement unit, booking facility, or the Central Repository are thus not "police records," and licensing boards do not come within any of those categories. *Id.* (g). Similarly, court records are "official record[s] of a court that the clerk of a court or other court personnel keeps" about criminal proceedings. *Id.* (d). So, again, licensing board records cannot be "court records" because they are not kept by court personnel. A standard expungement order conforming to Form 4-508.1 therefore will not reach the records of a licensing board.

The form's focus on police and court records is consistent with the Expungement Law's focus on those records. The first provision of the Expungement Law (after the definitions section) reads: "A police record or a court record is subject to expungement under this subtitle." CP § 10-102(a). Similar language recurs throughout the law's procedural provisions. Sections 10-105 and 10-110 govern expungement in cases where charges were filed (other than certain cannabis charges). If a petitioner requests expungement and the State's Attorney does not object, "the court shall pass an order requiring the expungement of all police records

and court records about the charge." CP §§ 10-105(d)(2), 10-110(e)(3). If the State's Attorney does object but the court finds the petitioner entitled to expungement, the "court shall order the expungement of all police records and court records about the charge." CP §§ 10-105(e)(2), 10-110(f)(1). And "every custodian of the police records and court records that are subject to the order of expungement" must comply. CP §§ 10-105(f), 10-110(h). There are no analogous provisions referring to any other category of records.

The implementing Rules also assume that only police and court records are subject to expungement. Rule 4-502 defines "records" to mean "police records" and "court records" only. *See* Md. Rule 4-502(j). All of the other provisions of the Rules then reference expungement of "records." *See, e.g.*, Md. Rules 4-501, 4-504(a), 4-508(a), 4-510.

Some provisions of the expungement statute do contemplate expungement of "other records" beyond police and court records. Section 10-105(a), in particular, states that a person "may file a petition listing relevant facts for expungement of a police record, court record, *or other record maintained by the State or a political subdivision*." CP § 10-105(a) (emphasis added); *see also* CP § 10-110(a) (same). But even when such "other records" exist (an issue we discuss in Part II.B.2, below), an expungement order will not reach them without a specific request. *See Davis v. Magee*, 140 Md. App. 635, 654-55 (2001); *Cintron*, 265 Md. App. at 502. In *Davis*, for example, the expungement petitioner argued that a county had failed to comply with an expungement order because its social services agencies had maintained records of a child abuse investigation related to the criminal charges. 140 Md. App. at 641, 652. The court declined to decide whether the child abuse investigation records were expungeable, because the petitioner had not asked for them to be expunged. *See id.* at 655.

Thus, in the bulk of cases where a licensee informs one of your boards that a conviction has been expunged, the expungement order will not reach records of your board. The standard form expungement order only reaches police and court records. And even to the extent other records are expungeable, an expungement order will not reach them except upon specific request. We turn now to the question of what non-police and court records a petitioner may in theory request to have expunged.

> 2. *The Provision for Expungement of "Other Records" Does Not Reach All Records Relating to License Discipline*

As just noted, some provisions of the Expungement Law seem to contemplate expungement of "other records" beyond police and court records. CP §§ 10-105(a), 10-110(a). But other provisions of the statute assume that only police and court records can be expunged. *Supra* Part II.B.1. The Expungement Law is thus ambiguous on the question of whether, and to what extent, it allows expungement of "other records." When this type of ambiguity arises, we try to harmonize the provisions of the statutory scheme as far as possible. *See, e.g.*, *Montgomery County v. Robinson*, 435 Md. 62, 77 (2013).

For reasons that we will explain below, although not free from doubt, we think the best way to harmonize the law's provisions here, consistent with traditional canons of statutory interpretation, is to give meaning to the statutory references to "other records" but read them to mean only records that are the same in substance as police and court records without technically meeting the statutory definitions of those terms. On this understanding, "other records" would mean documents that originated as police or court records but have come into the hands of other custodians, including licensing boards.

As a starting point, we do not think the term "other records" can be read so broadly as to cover all public records that mention the criminal charge. Although the term may be broad in the abstract, "the meaning of [even] the plainest language is controlled by the context in which it appears," *e.g.*, *Adelakun v. Adelakun*, 491 Md. 1, 22 (2025) (quoting *Lillian C. Blentlinger, LLC v. Cleanwater Linganore, Inc.*, 456 Md. 272, 295 (2017)), and the context here suggests that the meaning is more limited.

For one thing, reading "other records" that broadly would create conflict with the requirements of other statutes. We have a mandate to read, where possible, the General Assembly's enactments on the same subject as a "consistent and harmonious body of law." *See, e.g.*, *State v. Ghajari*, 346 Md. 101, 115 (1997) (quoting *State v. Harris*, 327 Md. 32, 39 (1992)). The Health Occupations boards are subject to a statutory requirement to post disciplinary orders on their websites. HO § 1-607. A reading that required the expungement of all records mentioning a conviction, and in particular that required expungement of final disciplinary orders, would put the Expungement Law in conflict with this

statutory mandate, and we should avoid such a conflict if we can. Similarly, the Public Information Act affirmatively requires the disclosure of "any orders and findings that result from formal [licensing] disciplinary actions."  Md. Code Ann., Gen. Prov. ("GP") § 4-333(b)(7).[8]  Although the Public Information Act defers to confidentiality mandates found in other law, *see* GP § 4-301(a)(2), a reading that allowed expungement of final disciplinary orders would create at least some tension with the apparent legislative intent that such orders be available to the public.

A reading of "other records" that encompassed all public records referencing a conviction would also create significant practical problems.  "When seeking legislative intent, we consider not only the objectives and purpose of the enactment, but the consequences resulting from one construction rather than another." *Blaine v. Blaine*, 336 Md. 49, 69 (1994).  For example, the law does not contemplate expungement by redaction alone, except in the narrow case of docket and index entries.  *See* CP § 10-101(f); Md. Rules 4-511, 4-512.  This would potentially mean, under a broad reading of "other records," that the entire record would have to be destroyed or removed if it contains any reference to a criminal charge.  That requirement could create serious difficulties both within and outside the context of licensing discipline records.  For example, voter registration files maintained by State and local boards of elections refer to criminal convictions because a felony conviction can temporarily suspend the right to vote.  *See* Md. Code Ann., Elec. Law § 3-102(b)(1).  What happens if one of those felony convictions is expunged?

Reading "other records" to cover all public records mentioning a conviction would also leave licensing boards in a bind when asked about the status of licenses revoked for criminal conviction.  As we have explained, expungement does not invalidate the license discipline itself. *Supra* Part II.A.  But if all records mentioning the conviction (which would include the final disciplinary order and most or all records of the disciplinary proceedings) were expunged, then, if asked about the licensee's status, agency staff could not respond without obtaining a court order to disclose information from expunged records.  *See* CP § 10-108(a).

---

[8] Indeed, under the Public Information Act's licensing records exemption, the final disciplinary order will often be the only document from a disciplinary proceeding that the licensing board may disclose to the public.  *See* GP § 4-333(a)(1), (b)(7); *see also* 71 *Opinions of the Attorney General* 305, 310-11 (1986).

Further, without a clear limiting principle, the broad reading would require expungement, by destruction or removal to a secure area, of even (for example) emails among licensing agency staff mentioning a licensee's conviction. Failure to destroy those emails, or remove them, would expose agency employees to criminal penalties and the loss of their jobs. *See* CP § 10-108(d). Despite all these potential issues, nothing in the law gives custodians of "other records" notice or the opportunity to be heard on the expungement petition. *See* CP §§ 10-105(d)(1), 10-110(e)(1). We thus do not think that the General Assembly intended the "other records" language to cover all public records that mention a conviction, because of the tension among statutes and the practical problems such a reading would create.

But the provision must cover some records beyond police records and court records, as we cannot read the phrase "other records" out of the statute entirely. *See, e.g.*, *Mid-Atlantic Power Supply Ass'n v. Public Serv. Comm'n*, 361 Md. 196, 214-15 (2000) (stating the rule of interpretation that words in the statute should not be rendered meaningless). Again, the traditional canons of statutory interpretation guide our efforts to assign meaning to this phrase. *See, e.g.*, *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 512 (1987).

First, we think the phrase "other records" most likely only covers records that are closely related to police and court records. This follows from the principle that we should harmonize the statute's provisions to the extent we can. *E.g.*, *Robinson*, 435 Md. at 77. As we previously noted, various provisions of the Expungement Law assume that expungement *only* applies to police and court records. *Supra* Part II.B.1. For example, the statute provides that if the court, after a hearing, finds the petitioner entitled to expungement, the "court shall order the expungement of all police records and court records about the charge," with no mention of "other records." CP §§ 10-105(e)(2), 10-110(f)(2). And the Expungement Law's scope provision states that "[a] police record or a court record is subject to expungement under this subtitle," again with no mention of "other records." CP § 10-102(a). The best way to reconcile these provisions with the need to give some meaning to the "other records" language is to conclude that "other records" must be akin, at least in substance, to police and court records.

Other textual evidence also supports the view that "other records" should be closely related to police and court records. Originally, the "other records" provision applied to "police records,

court records, and other records . . . *pertaining to the charge*." *E.g.*, Md. Ann. Code, Art. 27, § 737(a) (1996 Repl. Vol.) (emphasis added). In the code revision process that created the Criminal Procedure Article, the phrase "pertaining to the charge" was eliminated. 2001 Md. Laws, ch. 10 (Revisor's Note to CP § 10-105). But changes in a code revision bill are presumed to be non-substantive. *See, e.g.*, *Comptroller v. Blanton*, 390 Md. 528, 538-39 (2006). Thus, "other records" must still "pertain[] to the charge" to be expungeable. And under the canon of interpretation known by the Latin name *ejusdem generis*, "other records" must "pertain to the charge" *in the same way* as "police records" and "court records." The *ejusdem generis* canon construes a term at the end of a list to include only items "of the same class or general nature as those specifically mentioned." *See, e.g.*, *In re Wallace W.*, 333 Md. 186, 190-91 (1993). We must therefore read "other records" as covering records that "pertain[] to the charge" in ways similar to the defined categories of police and court records.

The history of the "other records" provision again supports this focus on police and court records. The language first appeared in 1982, when the General Assembly for the first time authorized expungement of certain conviction records.[9] 1982 Md. Laws, ch. 872. Among other changes, the 1982 bill amended the language authorizing a petition for expungement to read: "[A] person . . . may file a petition setting forth the relevant facts and requesting expungement of the police records, court records, *and other records maintained by the State of Maryland and its subdivisions*, pertaining to the charge." *Id.* (amending Md. Ann. Code, Art. 27, § 737(a)(7)) (new language emphasized) (now codified at CP § 10-105(a)). But the bill also reenacted, without change, language that seemed to limit expungement to police and court records. *See id.* (Art. 27, § 737(e)) ("If the court finds that the person is entitled to expungement, it shall enter an order requiring the expungement of police records and all court records pertaining to the charge."). And other aspects of the 1982 bill's legislative history indicate that the Legislature was still focused on police and court records. The title of the bill was: "An Act concerning Police and Court Records—Expungement." *Id.* The bill file, including the bill request form and written testimony on the bill, also assumes the bill would deal only with police and court records. *See generally* Bill File on H.B. 1074, 1982 Leg., Reg. Sess. There was no discussion

---

[9] Specifically, the 1982 legislation allowed expungement of convictions the Governor had pardoned. 1982 Md. Laws, ch. 872. Prior law had only authorized expungement in the case of a non-conviction disposition like acquittal, dismissal, or nolle prosequi. *See id.*

in the legislative history of what other categories of records might be expunged.

The General Assembly also is presumed to know that the Maryland Rules have never contemplated expungement of records related to convictions, other than police and court records. *Compare* Md. Rules 4-501 to 4-512, *with* Md. Rules 4-501 to 4-512 (1984 Repl. Vol.). "One of the fundamental precepts of statutory interpretation is that the General Assembly is aware of existing law when it enacts new legislation." *LeCronier v. United Parcel Serv.*, 196 Md. App. 131, 141 (2010). And just as we do when there are two statutes on the same subject, we must attempt to harmonize a statute and court rule on the same subject when possible. *See, e.g.*, *Battley v. Banks*, 177 Md. App. 638, 650-51 (2007). Not only the text of the Rules themselves, but also the longstanding practice under the rules of limiting expungement to police and court records, is relevant. *See, e.g.*, 72 *Opinions of the Attorney General* 81, 85 (1987) (explaining that a "longstanding practice . . . consistently and publicly followed, is persuasive as to the legislative intent"). If the General Assembly believed the Rules were inconsistent with the statute, we would expect it to have said so more clearly on one of the many occasions it has amended the Expungement Law in the last forty years.

To sum up, then, we think the best way to reconcile the available evidence of legislative intent is to conclude that "other records" are records that are not within the statutory definitions of "police records" and "court records," but are similar in nature to police and court records and "pertain to the charge" in the same way as those records. The question becomes: what records might fall into that category?

We can think of only one category of records that is sufficiently related to "police records" and "court records" (and that pertains to the charge in the same way) but does not fulfill the statutory definitions: records that originated as police or court records but are not held by a court or police department. The Expungement Law defines police records and court records both by their nature and by their location. Thus, a record that is a police or court record by virtue of its content would not fulfill the statutory definition if found in the hands of a different custodian, like a licensing board. So, for example, a criminal court docket sheet is a "court record" only if found in the records of the court itself. *See* CP § 10-101(d). And an arrest report is a "police record" only if a police department holds it. *See id.* (*i*). But if one of these records, like a docket sheet or an arrest report, were to come into the hands

of another agency, like a licensing board, it would not be expungeable as a "police record" or "court record." The most likely reading, in our view, is that the reference to "other records" was intended to address that gap. Importantly, these records (that originated as police and court records but are now found elsewhere) "pertain to the charge" in the same way as police and court records—namely, they also originated as part of the criminal proceedings.

Indeed, at least some other states, when faced with similar ambiguity in their expungement statutes, have read those statutes as limited to records originating from the police investigation or court proceedings. In Oregon, for example, expungement applies to "the record of conviction and other official records in the case, including the records of arrest." Or. Op. Att'y Gen. No. OP-2000-1, 2000 WL 992134, at *5 (citation omitted). The Oregon Attorney General interpreted "other official records in the case" to mean "all records that were generated by law enforcement or the court in the course of the criminal investigation and judicial proceeding" but not records of licensing agency disciplinary proceedings. *Id.* at *7. Oregon's language is narrower than Maryland's in some ways ("*in* the case" instead of "*pertaining to* the charge") but broader in others ("in *the case*" instead of "pertaining to [just] *the charge*"). The Oregon Attorney General's reading is thus some indication of how a Maryland court might read Maryland's "other records" language.

Similarly, the Supreme Court of Kentucky read the phrase "records relating to the arrest, charge, or other matters arising out of the arrest or charge" as applying only to records that were, by their nature, "criminal records" or "law enforcement records." *See Louisville/Jefferson County Metro. Gov't v. Moore*, 701 S.W.3d 335, 353-54 (Ky. 2024). This would exclude "internal employment files" or "personnel files," even when information in those files was obtained from police records. *See id.* at 354-55. Again, this reading gives meaning to the phrase "other matters" while still striking a reasonable balance between expungement and government functioning, and focusing on the records that are the expungement law's core concern.

There are also other states that have taken similar approaches. *See, e.g.*, *D.A.*, 58 N.E.3d at 172 (concluding that the term "conviction records" did not include records related to a civil forfeiture); *Director of Revenue v. Klenke*, 29 S.W.3d 391, 392-93 (Mo. Ct. App. 2000) (statute authorizing expungement "from all official records [of] all recordations of [an] arrest, plea, trial or

conviction" did not reach notation of administrative suspension for DUI in driving record); 1983 Ohio Op. Att'y Gen. 2-384, 1983 WL 178761, at *2 (Dec. 21, 1983) (concluding that whether term "all official records pertaining to the case" includes records of licensing body would require case-by-case determination based on how "interconnected" the records are). *But see, e.g.*, *Janevicius v. White*, No. 1-13-2423, 2014 WL 2719322, at *6-7 (Ill. App. Ct. June 12, 2014) (unpublished) (affirming order expunging information about criminal charge from driving record, under statute authorizing expungement of "arrests and charges not initiated by arrest").

An example will illustrate how our reading works in practice. Suppose, to use one of the hypotheticals you raised in your opinion request, a licensed drug counselor were convicted of a drug-related offense, and the Board of Professional Counselors and Therapists determined the crime to be one of moral turpitude and revoked the counselor's license. The files of the board would then likely contain records that originated as police or court records in the criminal case, such as a docket sheet, charging documents, a plea agreement, or the judgment of conviction. *See, e.g.*, *Oltman*, 162 Md. App. at 468. But it would also contain records that originated from the board itself, like meeting minutes and the final order of discipline. Assume the former licensee then petitioned for expungement and specifically sought expungement of records of the Board of Professional Counselors and Therapists as "other records."

Under our interpretation, the former category of documents (e.g., the criminal charging document) would be subject to expungement as "other records," but the latter (e.g., the board's minutes) would not. The former, in the hands of the licensing board, would not be "court records" as defined in CP § 10-101, but they would be other records pertaining to the charge in the same way as court records, because they would have originated from the criminal case itself. On the other hand, the latter would pertain to the criminal charge only indirectly, and in a different way, because they would not have originated from the criminal case itself, but a collateral proceeding. Thus, only the former set of records could be subject to an expungement order.

In sum, our opinion is that the Expungement Law does not authorize or require expungement of all records of a license discipline proceeding arising from a criminal conviction. The most reasonable reading is that it authorizes expungement only of records that originated as part of the criminal case and later came

into the hands of the licensing agency, such as charging documents or criminal judgments (and even then, only if specifically requested and ordered by the court). This reading gives effect to the statutory references to "other records" while acknowledging that court records and police records are otherwise the statute's exclusive focus.

### C. Legislative Clarification of the Scope of Expungement May Be Advisable

We acknowledge that there are policy arguments that could support a broader scope of expungement. After all, the overall purpose of expungement is to reduce the stigma borne by individuals with criminal records. *Supra* Part I.A. The continued availability of State records that reference a criminal conviction, but fall outside the category of "other records," arguably undermines that purpose. And even for records that are expungeable, an expungement petitioner will likely have difficulty identifying every custodian of expungeable records. *See Cintron*, 265 Md. App. at 502 (noting this "pragmatic concern[]").

For these reasons and given the ambiguity in the statutory scheme, the General Assembly may wish to consider clarifying the law governing the following issues: which records, if any, beyond police records and court records are subject to expungement under the Expungement Law; under what circumstances expungement may affect previously issued license discipline that relied exclusively on a criminal conviction; and the relationship between the Expungement Law and statutes that require public posting of licensing boards' disciplinary orders.

### III
### Conclusion

As the law currently stands, expungement of a criminal conviction requires the destruction, or removal to a limited-access area, of certain records but does not invalidate or void the original conviction. Thus, any professional disciplinary actions that relied on the criminal conviction also are not invalidated by expungement. In addition, expungement generally does not require the destruction or removal of all records related to a license discipline matter based on a criminal conviction. Rather, the best reading of current law in our view is that expungement can, at most, only reach records in the hands of licensing agencies that originated in the criminal case as police or court records. And even these

records will not be subject to an expungement order unless the expungement petitioner makes a specific request.

               Anthony G. Brown
               Attorney General of Maryland

               Thomas S. Chapman
               Deputy Chief,
                Opinions & Advice

Patrick B. Hughes
Chief Counsel, Opinions & Advice